The People of the State of New York, Respondent, v
Dominick DiLuca, Also Known as Dominick DiLucca, and Joseph Petrizzo, Also Known as Mooney,
Appellants.

Second Department, March 29, 1982

### APPEARANCES OF COUNSEL

*Spitznagel & Harmel* (*Carl J. Spitznagel, Jr.,* of counsel), for Dominick DiLuca, appellant.

*Ain, Libert & Weinstein* (*Kenneth J. Weinstein* of counsel), for Joseph Petrizzo, appellant.

*Patrick Henry, District Attorney* (*Gabrielle Weglein* of counsel), for respondent (separate briefs filed).

### OPINION OF THE COURT

Brown, J.

Upon these appeals we are asked to consider whether jurors may be allowed to take notes during trial.

The indictment of the defendants arises out of the transfer of the sum of $2,000 from defendant Petrizzo to an individual named Lido Occhiuto. It was charged that Pe-

trizzo gave said moneys to Occhiuto as a loan and threatened him with physical harm if he defaulted; that Occhiuto was to pay interest on the loan at the rate of $100 a week until he could pay back the original $2,000 and that he made several weekly $100 payments to defendant DiLuca who was acting on behalf of Petrizzo. Occhiuto claimed that when he ceased making payments due to a lack of funds, he began receiving threatening telephone calls from the defendants. He further claimed that for a period of time he again made regular interest payments to DiLuca in the amount of $50 but when he stopped, again due to a lack of funds, the defendants began to renew the threats of physical harm.

Thereafter, Occhiuto was convicted of an unrelated grand larceny charge and, in exchange for a recommendation that he not be incarcerated thereon, he agreed to assist in the prosecution of the defendants with respect to the allegedly usurious loan. The investigation lasted about two months and involved the extensive use of tape recordings. Defendants were subsequently indicted for conspiracy in the fourth degree, grand larceny in the first degree and criminal usury in the second degree (two counts).

The defendants claim that the $2,000 was given to Occhiuto to be used for a business venture and that when Petrizzo learned that the money was not being used as intended, he demanded that it be repaid. The defendants claim that all of the payments made by Occhiuto were credited toward the repayment of the $2,000, that no usurious interest rate was charged and that Occhiuto was never threatened with physical harm.

At the defendants' first trial, the court dismissed the conspiracy charge and one count of criminal usury. However, the jury was unable to agree upon a verdict with respect to either defendant on the remaining charge and a mistrial was declared.

Thereafter the defendants were brought to trial a second time and, after both sides had rested, and prior to the commencement of summations, the Trial Judge, *sua sponte,* announced that it was his inclination to permit the jurors to take notes during the summations and the charge.

Both defense counsel strenuously objected, but the Trial Judge (who had presided at the first trial as well) concluded that note-taking might be helpful for the jurors to assist them in their deliberations. He said that it might minimize the number of times that the jury might come back for further instructions or additional information and that "the time has come to test out this kind of practice".

Thereafter, between six and eight jurors accepted note pads from the court and three jurors were observed taking notes during the summations and the court's charge and during a read-back of taped conversations received in evidence. The court gave no advice to the jurors with respect to taking of notes nor were they instructed regarding the proper use thereof. Other than generally objecting to the court's allowing the jurors to take notes, however, neither defense counsel requested that cautionary instructions be given to the jury.

After two days of deliberations, the jury found defendant Petrizzo guilty of attempted grand larceny in the first degree and criminal usury in the second degree. Defendant DiLuca was found guilty only of criminal usury in the second degree.

The appropriateness of note-taking by jurors has been considered by most of the Federal Circuit courts and by a number of States other than New York. The Federal courts have concluded that absent an abuse of discretion, it is within a trial court's province to allow a jury to take notes (*United States v Bertolotti,* 529 F2d 149 [2d Cir]; *United States v Maclean,* 578 F2d 64 [3d Cir]; *United States v Rhodes,* 631 F2d 43 [5th Cir]; *United States v Johnson,* 584 F2d 148 [6th Cir]; *United States v Braverman,* 522 F2d 218 [7th Cir], cert den 423 US 985; *United States v Anthony,* 565 F2d 533 [8th Cir]; *Toles v United States,* 308 F2d 590 [9th Cir], cert den 375 US 836; *United States v Riebold,* 557 F2d 697 [10th Cir], cert den 434 US 860; *Goodloe v United States,* 188 F2d 621 [Dist of Col Cir], cert den 342 US 819). In *United States v Maclean* (*supra,* at p 66) the court concluded that the benefits of note-taking "are substantial enough to allow trial judges to decide, in each case, whether note-taking should be permitted. Since the value of note-taking will vary according to the complexity and

quantitative nature of each trial as well as according to the abilities and desires of the jurors, the decision on whether to permit note-taking is best left to the trial judge to make based on the circumstances of each case. 'It is the [trial] judge . . . who has the ultimate responsibility for the conduct of a fair and lawful trial.' *Lakeside v. Oregon,* 435 U.S. 333, 341, 98 S.Ct. 1091, 1096, 55 L.Ed.2d 319 (1978)."

The trend among the States is also to allow jurors to take notes and some States have enacted statutes permitting note-taking by jurors (see Parry, Taking Note of Note-Taking, 10 Col J of Law and Social Problems, 565, 585, n 102). A number of State courts have considered the issue and have held that it is within the trial court's discretion to allow a jury to take notes (see Ann., 14 ALR3d 831). At least one State, however, has enacted a statute prohibiting the practice of jurors taking notes (see Pa Rules of Crim Pro, rule 1113).

No New York Court has directly passed upon the issue of whether jurors may take notes. In *Bolm v Triumph Corp.* (58 AD2d 1014), however, the Fourth Department concluded that it was improper for a trial court to instruct one juror to take notes on the "key" parts of the charge for the benefit of the other members of the jury. It apparently had been left to the discretion of this selected juror to determine what the "key" parts of the charge were and the Fourth Department, in holding that this was error, reasoned that (p 1015) "[t]he responsibility for explaining the law rests upon the court * * * and not upon a designated lay juror who might or might not record statements of law accurately, and the court should not have directed the notetaking".

The New York Pattern Jury Instructions (PJI 1:6, 1981 Cumm Supp pp 8-9) recommends that when the issue of juror note-taking arises, the court should instruct the jury as follows:

"Jurors sometimes inquire whether they may take notes. The law does not prohibit your doing so, but I should also point out that there is no need for your doing so, since the court reporter takes down everything that is said in the courtroom and will read back to you during your delibera-

tions any portion of the transcript you may ask for. Taking notes presents the further problem that doing so may divert your attention from some very important testimony given while you are taking the notes.

"In the event any of you do take notes during the trial, I point out to you and your fellow jurors that notes are simply an aid to memory and may not be given any greater weight or influence in the determination of this case than the recollection or impression of other jurors with respect to the facts or the conclusions to be drawn from the facts. Any difference between such a recollection and a juror's notes should, in any event, be settled by asking to have the court reporter's transcript on the point read back to you, for it is. the court record rather than any juror's notes upon which you must base your determination of the facts and ultimately your verdict."

Section 426 of the Former Code of Criminal Procedure provided that deliberating jurors might "take with them notes of the testimony or other proceedings on the trial, taken by themselves or any of them, but none taken by any other person." However, the Criminal Procedure Law, which became effective in 1971, does not contain any such provision. While it might be argued that the failure to re-enact a provision permitting note-taking might imply that the Legislature rejected the practice, we find no evidence to support such view.

Clearly, note-taking by jurors in an appropriate case can be beneficial. It can assist jurors in refreshing their memories and enhance their ability to recall important evidence (Schwarzer, Communicating with Juries: Problems and Remedies, 69 Cal L Rev 731, 758). This can be especially helpful in a long and complex case. As the trial court concluded in the instant case, note-taking can minimize the number of times that a jury might be required to seek further instructions or additional information from the court during its deliberations. Thus, it has been argued that note-taking focuses the jurors' concentration on the proceedings and prevents their attention from wandering (Parry, Taking Note of Note-Taking, 10 Col J of Law and Social Problems, at p 578). As was pointed out in *United States v Carlisi* (32 F Supp 479, 483 [Dist Ct, EDNY]):

"There is no legal reason why * * * notes should not be made by jurors. Judges and lawyers make notes, why not jurors? Certainly the making of notes would better aid their memories and thus enable them to more intelligently consider the evidence.

"While it did not happen in this case I see no objection to all jurors, if they desire, making notes which could be used by them to refresh their recollections, when we realize that the purpose of a law suit is to do justice rather than make it a game of chance. The Courts should make progress with the times."

The argument most frequently raised in opposition to permitting jurors to take notes is that more significance will be placed by the jurors on their notes, which may be inaccurate, incomplete or misleading, than on their own independent recollection. The notes may accentuate irrelevancies and ignore more substantial issues and evidence. It has been said that "[a]lthough judges and counsel take notes, their legal training enables them to take proper notes. Because he lacks this legal background, the juror cannot possibly know what is relevant or important except for the obvious" (Parry, *id,* at p 575). Consequently, a juror "may note the statement of one witness and fail to take down the evidence of other witnesses directly contradicting it. He may note down trivial matters and overlook the vital facts in the case" (McNagny, Jurors Should Not Be Allowed to Take Notes, 32 J of Amer Judicature Soc 58).

Another danger often cited by those who would not allow the taking of notes by jurors is that the juror with the best notes will unduly influence and possibly mislead the other jurors. In commenting upon this concern, it has been argued: "Will not certain jurors, imbued with the pride of authorship stubbornly insist upon the correctness of their own notes and the importance of the evidence they have noted, and will not others, with few and uncertain notes, yield to those with more voluminous ones? Many * * * people are unduly impressed with the importance of the written word." (McNagny, *id,* at p 59). In *United States v Davis* (103 F 457, 470, affd 107 F 753) the court, recognizing that note-taking jurors might unduly influence the other jurors stated that: "the juror taking notes [has] an

undue influence in discussing the case when he appeals to his notes to settle conflicts of memory. Without corrupt purpose, his notes may be inaccurate, or meager or careless, and loosely deficient, partial, and altogether incomplete. With a corrupt purpose, they may be false in fact, entered for the purpose of misleading or deceiving his fellows when he comes to appeal to them."

Those who oppose note-taking also claim that it will distract the jurors' attention from the proceedings. Instead of listening to important testimony, the jurors may be jotting down notes on a different and less important point. While taking notes, the jurors may also not pay sufficient attention to the behavior of witnesses and may thus be unable to properly assess their credibility. Otherwise put, it is feared that jurors, who for the most part are not skilled note-takers, cannot do two things at one time. It has been said that: "Courts of appeal refuse to weigh the evidence on the ground that a trial judge, who has the opportunity to see and hear the witness and observe his demeanor on the stand, is in the best position to determine whether the evidence is sufficient to sustain a verdict. This opportunity granted to the trial judge should be equally important to the jurors * * * Often what a witness says is far less important than the way he says it" (McNagny, id., at p 58).

We conclude that the decision as to whether jurors should be permitted to take notes in a particular case is properly left to the discretion of the trial court and that absent an abuse of that discretion, the trial court's determination should not be disturbed. However, this discretion must be exercised with caution in view of the problems that may arise with respect to both the taking of notes and the use thereof during jury deliberations. Accordingly, it is our view that should a trial court choose to allow the taking of notes, it is essential that preliminary cautionary instructions be given with respect to both the taking and the use of such notes and thereafter that such instructions be repeated at the conclusion of the case as part of the court's charge prior to the commencement of jury deliberations.

These mandatory cautionary instructions require an explanation to the jury that they should not permit their

note-taking to distract them from the ongoing proceedings; that their notes are only an aid to their memory and should not take precedence over their independent recollection; that those jurors who do not take notes should rely on their independent recollection of the evidence and not be influenced by the fact that another juror has taken notes; and that the notes are for the note-taker's own personal use in refreshing his recollection of the evidence. The jury must be reminded that should any discrepancy exist between their recollection of the evidence and their notes, they should request that the record of the proceedings be read back and that it is the transcript that must prevail over their notes. We would also point out that in certain cases additional cautionary instructions may be required. Thus, for example, if one juror is a highly skilled note-taker, as a stenographer or secretary may be, then it might be appropriate to instruct the other jurors that they need not pay special attention to that one juror's notes.

We view these cautionary instructions as critical. In this respect, we disagree with those who take the position that while it is better practice to explain to the jury the proper use of notes during their deliberations, the failure to give cautionary instructions will only constitute reversible error if substantial prejudice is shown (cf. *United States v Marquez,* 449 F2d 89 [2d Cir]; *United States v Rhodes,* 631 F2d 43, *supra*).

In the case at bar, no cautionary instructions of any sort were given and the defendants made no request therefor. Thus, the trial court's failure to instruct the jury on the proper use of notes has not been preserved for our review as a question of law (see *People v Cona,* 49 NY2d 26). However, the defendants' guilt cannot be said to have been established by overwhelming evidence, and since they did affirmatively object at the outset to the trial court's permitting the jurors to take notes and, since we consider the giving of cautionary instructions to be essential for proper jury deliberations, we deem it appropriate in the interest of justice to vacate the judgments appealed from and order a new trial.

We have considered the other arguments advanced by the defendants and find them to be without merit.

MANGANO, J. P., THOMPSON and NIEHOFF, JJ., concur.

Two judgments (one as to each defendant) of the Supreme Court, Suffolk County, both rendered December 4, 1980, reversed, as a matter of discretion in the interest of justice, and new trial ordered.