THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LAWRENCE TUCKER, Appellant. (Action No. 1.)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WARREN DEVEAUX, Appellant. (Action No. 2.)

First Department, January 16, 1990

## APPEARANCES OF COUNSEL

*Laurence M. Goodman* of counsel *(E. Joshua Rosenkranz* with him on the brief; *Ira Mickenberg,* attorney), for Lawrence Tucker, appellant.

*Diane Pazar* of counsel *(Philip L. Weinstein,* attorney), for Warren Deveaux, appellant.

*Morrie I. Kleinbart* of counsel *(Robert M. Raciti* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

Defendants Deveaux and Tucker were convicted of all the robbery counts arising out of an October 26, 1986 knifepoint robbery of a newsstand operator at Grand Central Terminal, as well as a second robbery two days later, when defendants, with one of the two accomplices who participated in the first

crime, returned to the newsstand and robbed the same operator again at knifepoint. In both instances magazines were stolen. On October 29, 1986, the day following the second robbery, defendant Deveaux and the accomplice from the two earlier incidents struck another newsstand at the same terminal. Again, a knife was used and magazines taken. Deveaux was also convicted of robbery in the second degree as a result of his involvement in the October 29, 1986 incident.

The only issue of any consequence is the claim that the trial court erred by permitting a juror, over objection, to take notes during its supplemental charge. During the course of its deliberations, the jury asked to be reinstructed on the elements of robbery in the first and second degrees. At the conclusion of its supplemental charge, and after apparently noting that one juror had taken notes, the court addressed the jury as follows: "Now, look, there's no prohibition against taking notes, understand something, if you get in that jury room and somebody disagrees with your notes, says I think he said that, you have to come back out and have it read again, okay?" Following this cautionary instruction, counsel for defendants urged the court "to direct the juror to rip her notes up, she took of a charge just read by [it]." The court denied the application.

■■■ It is now argued, on the basis of this court's decision in *People v Anderson* (151 AD2d 335), that the juror's notes "amount to a partial written charge", which, absent defendant's consent, is prohibited and mandates reversal. It is also claimed that before permitting use of the notes the court should have instructed the jurors as to their proper use. Specifically, it is argued that because the juror's notes may have been misleading, may have unduly influenced and possibly misled the jurors, and may have distracted them from the proceedings, the court's failure to give the cautionary instructions outlined in *People v DiLuca* (85 AD2d 439) constitutes reversible error. Finally, it is argued that the juror's notes must be treated as if they were written copies of statutes which, pursuant to CPL 310.30, can be given to the jury only with the parties' consent, which was not given here. None of these complaints requires reversal under the facts of this case.

In *People v Anderson* (151 AD2d 335, *supra),* after reinstructing the jury on the elements of the crime with which the defendant had been charged, the trial court, *sua sponte,* and over the defendant's objection, "suggested that the jury take notes, and offered to provide paper for that purpose"

*(supra,* at 336). When a juror said that he already had paper, the court repeated the elements of the crime.

In an opinion that failed to command the support of a majority of the panel, two members of the court voted to reverse, finding two distinct errors in the trial court's note-taking procedure. The plurality drew a parallel between juror notes and submission to a jury of partial written instructions, a practice the Court of Appeals has barred where the defendant does not consent *(People v Owens,* 69 NY2d 585). Noting the dangers outlined in *Owens,* namely, the possibility that the trial court's selection and reduction to written form of certain parts of the charge, and the continuing physical presence of written instructions in the jury room, might overemphasize their importance at the expense of the oral instructions, the plurality concluded that those dangers were equally applicable to notes taken by the jury upon the suggestion of the court. Citing *People v DiLuca (supra,* 85 AD2d, at 446), the plurality also expressed concern about the reliability and accuracy of notes taken by jurors, as well as the risk that a note-taking juror might assume a position of authority in the jury room, and thereby lead other jurors to rely on the notes, rather than their independent recollections of the charge. Concurring in the result only, Justice Rosenberger was of the view that the trial court's direction, *sua sponte,* to the jurors to take notes, absent the cautionary instructions mandated by *DiLuca,* required reversal.

██ Contrary to defendants' claims, the trial court's cautionary instruction about jury note-taking in the instant case eliminated the risks cited in *Anderson* and *Owens (supra)* and removed this case from the ambit of those cases. It satisfied the concern shared by the plurality and the concurrence in *Anderson* because it insured that any notes taken by a juror would not receive undue prominence in the jury room. As noted in *People v DiLuca* (85 AD2d 439, *supra)* and by both the *Anderson* plurality and concurrence, the danger in permitting jury note-taking is the possibility that the notes "may * * * be given * * * greater weight or influence in the determination of [the] case [as opposed to] the recollection or impression of other jurors" *(supra,* at 443). Here, the court informed the jury that "if you get in that jury room and somebody disagrees with your notes, says I think he said that, you have to come back out and have it read again, okay?" Thus, the jurors were clearly told that any disagreement among them about the law, especially a discrepancy between

any juror's recollection and another's notes, required the jury to request reinstruction.

Defendants argue, however, that, notwithstanding this cautionary instruction, reversal is mandated because the trial court failed to charge the full panoply of instructions required by *DiLuca (supra)*, i.e., (1) that the jurors not permit note-taking to distract them from ongoing proceedings; (2) that their notes are only an aid to memory and should not take precedence over their independent recollection; (3) that those jurors who do not take notes should rely on their independent recollection of the evidence and not be influenced by another juror's notes; (4) that the notes are for the note-taker's own personal use in refreshing his recollection and (5) should any discrepancy exist between a juror's notes and the jurors' independent recollection, they should request that the record of the proceedings be read back.

Although defendants objected to the juror's taking notes, the only request made by either of them was that the notes be "ripped up". Significantly, neither defendant asked for the instructions outlined in *DiLuca.* Nor did either defendant inform the court as to any deficiency in its note-taking instructions, thereby depriving the court of the requisite opportunity to amend or supplement its instructions. Thus, the alleged inadequacy of the court's instructions is not preserved for appellate review as a matter of law. (CPL 470.05; *People v Williams,* 62 NY2d 765; *People v Hoke,* 62 NY2d 1022.) In any event, the court correctly applied the proper standard.

Contrary to defendants' claim, the full range of *DiLuca* instructions, some of which are applicable only where the jurors are taking notes of the trial testimony, would have been inappropriate here. For example, the instructions that warn the jurors not to be distracted from the ongoing proceedings, to rely on their independent recollection of the evidence, and to use the notes only to refresh their recollection about the evidence, would not have been relevant where the only note-taking was of the court's supplemental charge. In fact, the only instructions from *DiLuca (supra)* that were relevant in the circumstances presented—that the notes are to be used as an aid to recollection and that any discrepancy should be cured by a request for clarification—were given here.

Moreover, the carefully considered instructions formulated in *DiLuca (supra)* to guide the jury on note-taking during the trial were never intended to be talismanic. Undoubtedly, a

Trial Judge may use other language to caution the jury. For example, a straightforward instruction that it is the jury's recollection, not any individual juror's notes, which should control in its deliberations has been approved by the Federal courts as sufficient to prevent misuse of the notes. *(See, e.g., United States v Polowichak,* 783 F2d 410, 413; *United States v Bertolotti,* 529 F2d 149, 160.)*

■ Equally meritless is the unpreserved claim that the notes taken by a juror in this case should be treated like a court's submission to the jury of copies of the text of statutes, which requires the consent of the parties. *(See,* CPL 310.30; *People v Nimmons,* 72 NY2d 830.) Under no reasonable analysis can the notes taken by a single juror be compared to the court's distribution of copies of the text of a statute. As the Court of Appeals has pointed out, written copies of statutes pose a unique risk of misuse, since they provide only legal raw material, meaningless without explanation and when isolated from companion statutes and judicial interpretation. *(People v Moore,* 71 NY2d 684, 688.) As a result, jurors "may very well engage in a collateral debate as to [the statute's] meaning, thereby taking on the role as Judges of the law as well as Judges of the fact." *(Supra,* at 688; *see also, People v Sanders,* 70 NY2d 837, 838.) Here, the jury did not receive a written copy of any statute. Instead, a single juror took notes on a supplemental instruction that followed the jury's request for an additional charge. Moreover, the jury was carefully instructed that the notes were deserving of no more respect than any juror's recollection of the oral charge. Thus, we reject the suggested parallel between juror note-taking and the trial court's submission of written copies of a statute.

Nor does CPL 310.30, which, in limited circumstances, authorizes the submission of the text of a statute, require that a defendant consent before the jury can be permitted to take notes. Indeed, there is no such requirement either in case law or the statutes. In that regard, *People v Owens* (69 NY2d 585, *supra),* cited by the *Anderson* plurality in support of the consent requirement, does not impose any such requirement.[1]

---

1. In *People v Owens* (69 NY2d 585), the Court of Appeals noted that CPL 310.30 requires the consent of both parties before copies of statutes could be distributed to the jury. The court drew a parallel between that consent requirement and the submission, over objection, of partial written instructions, focusing on the danger of overemphasis of the partial instruction. The court, however, clearly did not require consent for all written submissions to the jury. For example, it specifically declined to decide whether a trial court could submit its entire charge in written form *(supra,* 69 NY2d, at 590, n).

*Owens* held that the dangers of overemphasis attendant to the distribution of Judge-selected written portions of the charge, "not unlike" the dangers created when CPL 310.30 is violated, were too serious to permit that practice over the defendant's objection. *(Supra,* at 591.)

The concerns expressed in *Owens (supra),* however, are not present in the instant case. Here, no juror took notes at the court's instruction or instigation. Instead, the court merely noticed that one juror, on her own accord, was taking notes. The court's instructions, under those circumstances, did not include any encouragement of that practice, and, in fact, informed the jury that the practice would be tolerated only if no special consideration were given to the notes. Thus, unlike the situation with judicially distributed copies of partial written instructions, there was no risk here that any juror would have believed that the notes held any special significance as far as the court was concerned.

Furthermore, in the instant case, the juror took notes only of the supplemental charge, which was in direct response to the jury's specific request. The Court of Appeals itself, both in *Owens (supra)* and in *People v Moore (supra,* 71 NY2d, at 687-688), has distinguished situations where the request for information comes from the jury from those in which written submissions are instigated by the trial court. *(See, People v Owens, supra,* 69 NY2d, at 591.) In *Moore,* the court approved the submission of a copy of the indictment to the jury, which had requested it. As *Moore* explains, when the jury requests the indictment, there is obviously no danger that its contents will unduly emphasize "one side of the case to the exclusion of the other". (71 NY2d, at 688.) Similarly, here, the jury could not have perceived the juror's written notes as some judicial signal about what was important in the case, since it was, not the Judge, but the jurors, who, by their request for reinstruction, had emphasized that portion of the charge.[2]

Finally, it should be noted several important policy considerations support the procedure employed by the trial court in

---

2. *People v Sanders* (70 NY2d 837) is not to the contrary. There, the Court of Appeals reversed because the court had distributed, at the jury's request and without the defendant's consent, which is an " 'absolute precondition' " *(supra,* at 838), copies of a statute. Unlike notes or written instructions, however, the submission of the text of statutes is governed by specific statutory mandate, CPL 310.30.

this case. Permitting jurors to take notes has been recognized as a time-honored device that can aid the jury's recollection, thus enabling it to review the evidence more intelligently during deliberations, without the need for repeated requests that the record be read back. *(People v DiLuca, supra,* 85 AD2d, at 443.) Note-taking also helps focus juror concentration on the proceedings, preventing their attention from wandering. *(See,* Parry, *Taking Note of Note-Taking,* 10 Colum J L & Soc Probs 565, 585 [1974].)

Indeed, in recognition of the efficacy of juror note-taking where appropriate restrictions and cautions are utilized, and the virtually unlimited variety of circumstances in which the issue can arise at trial, the *DiLuca* court, as well as various Federal and State courts, have left the decision to permit note-taking to the sound discretion of the trial court. *(See, e.g., United States v Polowichak, supra,* 783 F2d, at 413; *United States v Rhodes,* 631 F2d 43, 45; *United States v Bertolotti, supra,* 529 F2d, at 159-160.) In fact, as *Polowichak* recognized, note-taking by jurors is especially appropriate in a multicount or multiparty prosecution. (783 F2d, at 413.) Here, the jury was faced with a six-count indictment charging robery in the first and second degrees, arising out of three robberies, each involving different combinations of defendants. Moreover, only defendant Deveaux was charged with crimes arising from all three incidents. Thus, it is likely that the jury's request for a reinstruction arose from the understandable difficulty in sorting out these factors, and that the juror's note-taking was merely an attempt to utilize a convenient aid in focusing on that narrow portion of the court's instructions. Indeed, the jury's careful sorting out of the factors resulted in defendant Deveaux's acquittal of one count of robbery in the first degree arising from the October 29, 1986 robbery.

Since the risk in juror note-taking lies in the danger of overemphasis and inaccuracy, the trial court's cautionary instruction minimized, if not eliminated, that risk. Moreover, any claim of a parallel between juror note-taking and submission by the trial court of written materials to the jury fails, since, in this case, the notes could not have reflected any judicial emphasis of a particular part of the charge. The notes were taken by a juror on her own initiative and only on a portion of the charge on which the jury itself had asked for reinstruction.

We have examined defendants' other contentions and find them to be without merit.

Accordingly, the judgment of the Supreme Court, New York County (Walter Gorman, J.), rendered October 23, 1987, convicting defendant Deveaux of robbery in the first degree (two counts) and robbery in the second degree (three counts) and sentencing him, as a second felony offender, to concurrent indeterminate terms of imprisonment of from 8 to 16 years and from 5 to 10 years, respectively, and convicting defendant Tucker of robbery in the first degree (two counts) and robbery in the second degree (two counts) and sentencing him to concurrent indeterminate terms of imprisonment of from 5 to 10 years and from 3 to 6 years, respectively, should be affirmed.

MURPHY, P. J., CARRO, WALLACH and RUBIN, JJ., concur.

Judgments, Supreme Court, New York County, both rendered on October 23, 1987, unanimously affirmed.