THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN L. McCART, Appellant.

Fourth Department, May 11, 1990

APPEARANCES OF COUNSEL

*Joel L. Daniels (Rosemarie A. Wyman* of counsel), for appellant.

*Theodore E. Wiggins, Jr., District Attorney,* for respondent.

OPINION OF THE COURT

DILLON, P. J.

█ At trial on an indictment charging manslaughter in the second degree (Penal Law § 125.15 [1]), the jury found defendant guilty of the lesser included offense of criminally negligent homicide (Penal Law § 125.10). The judgment of conviction must be reversed and the indictment dismissed because the prosecutor was allowed to elicit expert testimony which impermissibly intruded upon the province of the jury on the issue whether defendant's conduct caused the victim's death. On this record, we cannot say that the error was harmless.

On June 10, 1988 the defendant and several other people, including the victim Alan Till, were drinking alcoholic beverages in a tavern in Mt. Morris. At about 2:30 A.M. Till passed out and fell from his barstool to the floor. Defendant and another man decided to play a "practical joke" on Till. After finishing their drinks, they carried Till to defendant's car and transported him to a nearby cemetery where they laid his unconscious body on the ground. By whatever means, the victim's clothing had been adjusted to expose a substantial part of his torso. The cemetery groundskeeper discovered Till's body at 7:00 A.M. and shortly thereafter Till was pronounced dead at the scene. The temperature at 8:00 A.M. was 40 degrees Fahrenheit and the low temperature for the preceding 24 hours was 34 degrees Fahrenheit. An autopsy revealed that Till's blood alcohol level was .42%. On both the provisional autopsy report and the final autopsy report, "acute ethanol intoxication" was listed as a diagnosis and, on the death certificate, the cause of death was stated as "acute ethanol intoxication". On the death certificate only, "hypothermia" was listed under "other significant conditions contributing to death", but Dr. Jacqueline Martin, the Deputy Medical Examiner who performed the autopsy, specifically excluded hypothermia as a cause of death.

Dr. Martin and two other medical experts testified at trial regarding the synergistic effect of alcohol and exposure. Each fully described how the consumption of alcohol can contribute to death from hypothermia by lowering the body's resistance

to cold, but only one offered testimony describing how exposure to cold can contribute to death from acute ethanol intoxication. Nevertheless, the three experts concluded that exposure was a contributing factor in causing the death. Over the vigorous objection of defendant that use of the language "link in the chain" posed a legal rather than a medical question, the prosecutor was permitted to elicit testimony from each of the experts that exposure was a "link in the chain" of causation leading to Till's death. Each of the experts pointedly declined to state, however, that, but for defendant's conduct in leaving Till at the cemetery, Till would have survived. Dr. Martin was asked whether Till would have died if he had been taken home that evening and put in his bed. She responded: "With a reasonable degree of medical certainty I cannot give a specific answer to that." Dr. Jeanne Beno, Chief Toxicologist for Monroe County, was asked whether Till would have survived if he had not been left in the cemetery. She responded: "It is possible he would have died." Dr. Nicholas Forbes, Chief Medical Examiner for Monroe County, also acknowledged that alcohol intoxication alone could have caused the death within a period of several hours.

As is demonstrated by the questioning of the medical experts, causation was a principal issue at trial. Indeed, the major part of defense counsel's summation was addressed to that issue. In its main charge, the court instructed the jury that "the prosecutor must at least prove that the defendant's conduct was an actual cause of death in the sense that it forged a link in the chains of causes which actually brought about the death." During deliberations, the jury sent a note to the court which stated: "Please read the part of the law which speaks to links of the chain that is the causation." In responding, the court repeated the language previously quoted. After the jury resumed deliberations, defendant's counsel moved for a mistrial. He argued that defendant was denied a fair trial because the request submitted by the jury highlighted the impropriety of permitting the experts to testify that exposure was a "link in the chain" of causation. The motion was denied, and a short time later the jury sent another note to the court in which it asked: "[C]ould you please repeat the causation." Again the court essentially repeated the language of the main charge. The jury resumed deliberations and, following a request for further instructions on the law relating to criminally negligent homicide, a verdict of guilty of that crime was returned.

A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another (Penal Law § 125.10).[1] To establish causation, "the prosecutor must, at least, prove that the defendant's conduct was an actual cause of death, in the sense that it forged a link in the chain of causes which actually brought about the death" *(People v Stewart,* 40 NY2d 692, 697; *see also, Matter of Anthony M.,* 63 NY2d 270, 280). It must be shown that defendant's actions were a "sufficiently direct cause" of the ensuing death to satisfy the requirements of the criminal, and not the tort, law *(see, People v Kibbe,* 35 NY2d 407, 412-413). Thus, an obscure or merely probable connection between defendant's conduct and the death will not support a conviction for any degree of homicide *(People v Stewart, supra,* at 697; *People v Brengard,* 265 NY 100, 108).

Generally, expert medical opinion is required to establish the causal connection *(Matter of Anthony M., supra)*. "As a general rule the admissibility of expert testimony on a particular point is addressed to the discretion of the trial court * * *. The guiding principle is that expert opinion is· proper when it would help to clarify an issue calling for professional or technical knowledge, possessed by the expert and beyond the ken of the typical juror" *(De Long v County of Erie,* 60 NY2d 296, 307; *see also, People v Cronin,* 60 NY2d 430, 432). Where there can be no doubt, however, that the jury is capable of comprehending the issues and evaluating the evidence, "the opinions of experts, which intrude on the province of the jury to draw inferences and conclusions, are both unnecessary and improper" *(Kulak v Nationwide Mut. Ins. Co.,* 40 NY2d 140, 148).

Here, viewing the evidence in the light most favorable to the People, but at once recognizing that the opinions expressed are but minimally supported by medical explanation, we accept the sufficiency of the testimony of the medical experts opining that exposure or hypothermia contributed to the death of Alan Till. Such proof was essential to establish a prima facie case and the subject matter was beyond the ken of the typical juror. It was unnecessary and highly prejudicial, however, to permit testimony from the experts that exposure

---

1. A person acts with criminal negligence when he "fails to perceive a substantial and unjustifiable risk", and such failure "constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation" (Penal Law § 15.05 [4]).

was a "link in the chain" of causes that led to Till's death. Under the guise of eliciting a medical opinion, the prosecutor intentionally used language which he knew would later be used by the court to instruct the jury on the standard to be applied to the causation issue.[2] The phrase "link in the chain" bears little or no relationship to a medical standard; it is the legal standard by which the trier of fact evaluates whether defendant's conduct is "an actual cause of death" *(see, People v Stewart,* 40 NY2d 692, 697, *supra).* That the jury was troubled by the causation issue is evident from its repeated inquiries of the court. It is highly probable that the experts' "link in the chain" analogy had a disproportionate impact upon the jury's assessment of the causation issue. At the least, it had the potential to confuse the issue. While, literally, the expert testimony related exposure to cause of death, we cannot exclude the possibility that it was accepted by the jury as proving the ultimate issue, that is, that defendant's conduct caused the death. Thus viewed, the testimony impermissibly intruded upon the province of the jury. In a case such as this, where the evidence of defendant's guilt is barely legally sufficient, "it is intolerable to permit a witness, cloaked in the garb of apparent expertise, to assume the function of the jury and attempt to answer the ultimate fact issue presented" *(People v Graydon,* 43 AD2d 842, 843).

█ Accordingly, the judgment convicting defendant of criminally negligent homicide should be reversed. Since defendant was found not guilty of the only count charged in the indictment, the indictment should be dismissed, without prejudice to the People to re-present any appropriate charges to another Grand Jury *(see, People v Gonazlez,* 61 NY2d 633).

CALLAHAN, DENMAN, BALIO and DAVIS, JJ., concur.

Judgment unanimously reversed, on the law, and indictment dismissed, without prejudice to the People to re-present any appropriate charges to another Grand Jury.

---

2. In his summation, the prosecutor told the jury that "the court will charge you on the law * * *. Part of it, the court will charge you has to do with being a link in the chain of causes of death".