THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JUAN MORALES, Appellant.

First Department, July 17, 1990

## APPEARANCES OF COUNSEL

*Karen Swiger* of counsel *(Stanley R. Kaplan* with her on the brief; *Robert T. Johnson, District Attorney,* attorney), for respondent.

*Amy Donner* of counsel *(Philip L. Weinstein,* attorney), for appellant.

## OPINION OF THE COURT

ASCH, J.

We find that defendant was deprived of a fair trial when Criminal Term permitted two jurors to take notes during the supplemental charge, over the objections of counsel, the codefendant's counsel and the prosecutor. While allowing jurors to take notes has been recognized, the risk may be that, in such cases, greater weight may be accorded by jurors to their notes, which may be inaccurate or misleading, than to their own independent recollections *(People v DiLuca,* 85 AD2d 439). Since note-taking during the presentation of evidence is not before us, we deal only with note-taking during the Judge's charge or supplemental charge.

CPL 310.30 provides that upon the jury's request for further instruction with respect to a statute, the court may give the jury copies of the text which in its discretion it deems proper, but only if the parties consent *(see, People v Sanders,* 70 NY2d 837, 838). Additionally, while the court may furnish a written list of offenses and possible verdicts (CPL 310.20), reversal is mandated where the court furnishes these materials again absent counsel's consent *(see, People v Nimmons,* 72 NY2d 830, 831). While the statutes do not directly address the submission of a written copy of the court's oral instructions to the jury, in *People v Owens* (69 NY2d 585) and *People v Brooks* (70 NY2d 896), the Court of Appeals held this practice to be impermissible, noting the risk that the jurors would place undue emphasis on the portion given to them and ignore or forget the oral portions which are not before them. Thus, *People v Anderson* (151 AD2d 335) held it to be error for the court to permit a jury to take notes during a supplemental instruction on the elements of the charge.

"In *People v Owens* * * * decided June 2, 1987, the Court of Appeals held that, '[w]here defense counsel objects, it is improper for a trial court, after reciting its instructions orally, to distribute only certain portions of that charge in writing to the jury for use in its deliberations.' Among the dangers and potential for prejudice to the defendant cited in *Owens* are the possibility that the selection and repetition of certain parts of the charge will overemphasize their importance and subordinate other parts, and that 'the written instructions may be reinforced by their physical presence in the jury room, as the oral instructions fade from memory.' * * *

"Where, as here, the written portion of the charge to be

taken into the jury room has not been prepared by the trial court but is, rather, the product of a juror's note-taking, the further risk of unreliability is presented, for there is no guarantee that the juror will record the instructions completely or accurately *(Bolm v Triumphant Corp.,* 58 AD2d 1014). Indeed, as was observed in *People v DiLuca* (85 AD2d 439, 445), ' "[w]ithout corrupt purpose, [a juror's] notes may be inaccurate, or meager or careless, and loosely deficient, partial, and altogether incomplete. With a corrupt purpose, they may be false in fact, entered for the purpose of misleading or deceiving his fellows when he comes to appeal to them" ' * * *. These dangers are compounded by the possibility that the note-taking juror will assume a position of authority in the jury room, leading other jurors to defer to his apparent expertise, rather than rely upon their independent recollection". *(People v Anderson, supra,* at 336-337.)

In the instant case, since only *two* jurors elected to take notes, the same problems cited in *Anderson (supra)* were likewise present. Writings frequently take on authority which may not be warranted, presenting the danger that a writing by two jury members might unduly and perhaps incorrectly influence the other jury members. Simply because the jury, rather than the Judge, initiated the note-taking should not change the result. Even where the jury requested a copy of a text of a statute, in the absence of counsel's consent, the Court of Appeals nevertheless ruled it to be reversible error to grant such a request *(People v Sanders, supra).*

It is noteworthy that in this case, after receiving a request from the jury for a written copy of the charge, the court told the jury that it would "love to but I tried it before" and that "the Court of Appeals * * * said I cannot do it". Expressing sympathy for the jurors' difficulty in remembering, the court said, however, it would permit the jury to take notes. As noted by defendant, this comment impliedly suggested to the jury they could use the note-taking to circumvent the *Owens* prohibition by memorializing, in longhand, elements of the charge, rather than relying upon the *complete* charge.

While *People v Tucker* (153 AD2d 164, 167-168), recently decided by this court, permitted the use of note-taking by a juror, it was noted there that: "[T]he trial court's cautionary instruction about jury note-taking * * * eliminated the risks cited in *Anderson* and *Owens (supra)* and removed this case from the ambit of those cases. It satisfied the concern shared by the plurality and the concurrence in *Anderson* because it

insured that any notes taken by a juror would not receive undue prominence in the jury room. As noted in *People v DiLuca* (85 AD2d 439, *supra*) and by both the *Anderson* plurality and concurrence, the danger in permitting jury note-taking is the possibility that the notes 'may * * * be given * * * greater weight or influence in the determination of [the] case [as opposed to] the recollection or impression of other jurors' *(supra,* at 443). Here, the court informed the jury that 'if you get in that jury room and somebody disagrees with your notes, says I think he said that, you have to come back out and have it read again, okay?' Thus, the jurors were clearly told that any disagreement among them about the law, especially a discrepancy between any juror's recollection and another's notes, required the jury to request reinstruction."

In *Tucker,* moreover, "the jury was carefully instructed that the notes were deserving of no more respect than any juror's recollection of the oral charge", and further, "[t]he court's instructions * * * did not include any encouragement [of note-taking], and, in fact, informed the jury that the practice would be tolerated only if no special consideration were given to the notes" *(supra,* at 169, 170).

In the present case, on the other hand, while the court did give a cautionary instruction, it omitted most of the points set forth in *People v DiLuca (supra).* Thus, it failed to specifically remind the jury that notes were only for the note-taker's personal use. In addition, instead of stressing that any disagreement by the jurors over any juror's recollection and another's notes *required* the jury to request reinstruction, as was done in *Tucker (supra),* the court here noted that jurors "might tend to feel that the people who have the notes have the right answer" and that is "not *necessarily* true". The court continued that it did not rely on its own notes, but when it was not sure, asked the reporter to read them back. Instead of *requiring* the jury to seek reinstruction, the court then simply said: "I would *suggest* the same is true when you deliberate. Because someone has notes doesn't mean those notes *necessarily* are reliable. * * * If that helps you recall what was said but the bottom line is * * * if you *want* that read back the reporter *can* always read it back to you. With that caution you may take the notes but they're not the answer. The answer is what I say and that is from the reporter's notes" (emphasis added).

This formulation did not rise to the level of cautionary

instruction required in *DiLuca (supra)* and, indeed, present in *Tucker (supra)*.

Further, the court prejudiced the defendant by saying to the jury, "I would lgive *[sic]* you the whole charge with the consent of *the attorney* but no one will consent so you can't have the charge" (emphasis added). By using the phrase "the *attorney*", the court certainly implied that defendant's counsel was the party who had refused consent. Thus, the court's decision to allow the jury to take notes despite the objection of both counsel and the prosecution, in addition to the court's further prejudical comments, deprived defendant of his due process right to a fair trial.

Accordingly, the judgment of the Supreme Court, Bronx County (Levy, J.), rendered February 9, 1988, convicting defendant, after trial by jury, of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree, and sentencing him to two concurrent terms of imprisonment of 5 to 10 years, should be reversed, on the law, and the matter remanded for a new trial.

RUBIN, J. (dissenting). The only meritorious issue raised by this appeal is whether reversal of a conviction is mandated because, irrespective of any cautionary instructions issued by the Trial Justice, some of the jurors took notes, specifically notes of the court's supplementary instructions which they had requested. It is the majority's position that note-taking on any aspect of the court's charge or supplemental charge requires a reversal. Among other apprehensions expressed by the majority are those stated by the Appellate Division, Second Department, in *People v DiLuca* (85 AD2d 439, 444-445)— that taking notes may distract the jurors from the proceedings, that the notes themselves may be inaccurate or incomplete and that their compiler may assume a preeminent status in the jury room.

While these concerns merit attention, it must be observed that they apply with equal force to memory, either individual or collective. A juror's mind may wander whether he is taking notes or not. In addition, there is no guarantee that a juror's recollection of the court's instructions will allow him to scrupulously distinguish between elements of various offenses or different degrees of culpability. Finally, there is no assurance that a particular juror claiming to possess a superior memory will not assume a dominant position during deliberations.

Moreover, note-taking by jurors is not without benefit—in refreshing recollection, minimizing read-backs and supplemental instructions and focusing the attention of the jurors on the proceedings. These competing considerations led the *DiLuca* court to entrust the question to the sound discretion of the Trial Justice *(People v DiLuca, supra,* at 445).

By way of background, it should be observed that jury note-taking cases in general emphasize that there is a perceived need on the part of jurors for some sort of written instructions to guide them in reaching a verdict in complex matters *(see, United States v Polowichak,* 783 F2d 410, 413). Moreover, there is no valid reason to deny to jurors an aid to memory generally employed by the court as well as by counsel *(People v DiLuca, supra,* at 444) and approved by the Federal courts and many States *(see, United States v Maclean,* 578 F2d 64). While there can be no dispute that instruction regarding the law requires particular accuracy, that observation itself is as demonstrative of the need for approved written instructions as it is of any necessity to preclude the taking of notes.

This court's opinion in *People v Tucker* (153 AD2d 164) is dispositive of the issue raised on this appeal. Addressing a situation of obvious similarity, we upheld the taking of notes by jurors where they had requested a supplemental charge and where the court had issued cautionary instructions regarding the use of notes taken during its delivery. In that case, where one juror was observed to be taking notes, the Trial Justice stated, "Now, look, there's no prohibition against taking notes, understand something, if you get in that jury room and somebody disagrees with your notes, says I think he said that, you have to come back out and have it read again, okay?" *(People v Tucker, supra,* at 166.) In the matter before us, the jury both requested the supplemental charge and asked to take notes. It is significant that the court felt constrained to deny the jurors' request for a copy of the supplemental charge because decisions of the Court of Appeals require the consent of counsel and "no one will consent". Although an objection to the taking of notes was stated by both the prosecution and the defense, no request for particular instructions was made. In permitting the taking of notes, the court delivered detailed cautionary instructions, stating, "I take notes too but I don't rely on them. Something comes up and I'm not sure and I ask the reporter to read it back and I would suggest the same is true when you deliberate. Because someone has notes doesn't mean those notes necessarily are

reliable. * * * With that caution you may take the notes but they're not the answer. The answer is what I say and that is from the reporter's notes." Defendant made no protest to these instructions, and the question of their propriety is not preserved for our review (CPL 470.05; *People v Thomas,* 50 NY2d 467, 471).

The circumstances presented by the instant appeal do not materially differ from those in *Tucker (supra)* and, unless compelling factors dictate otherwise, the principle of stare decisis requires an affirmance of defendant's conviction. It bears emphasis that this is not a case where a statute, the meaning and application of which require explanation by the court, has been supplied to the jury without consent of counsel (CPL 310.30; *People v Moore,* 71 NY2d 684, 688; *People v Tucker, supra,* at 169-170). Nor does it involve the furnishing of an incomplete charge by the court, which might cause the jury to seize upon the portion supplied to the exclusion of other relevant instructions *(People v Brooks,* 70 NY2d 896; *People v Owens,* 69 NY2d 585). In this respect, this matter is distinguishable from our decision in *People v Anderson* (151 AD2d 335), a case in which *the court* suggested that the jurors take notes on the elements of the crime of forgery. Thus, in *Anderson,* undue judicial emphasis was placed upon that portion of the court's charge and the particular crime to which it related. Here, by contrast, the request both for supplemental instructions and for permission to take notes thereon emanated from the jury. Consequently, there is no doubt that *before* any notes were taken, the jury had already determined what aspects of the charge were instrumental to their deliberations *(People v Moore,* 71 NY2d 684, 687, *supra).* If taking notes on only the supplemental charge is deemed to be objectionable on the ground that the notes concern less than the totality of the courts instructions then, *reductio ad absurdum,* so is the supplemental charge itself because it necessarily restricts the attention of the jurors to those areas in which instruction has been requested *(People v Owens, supra,* at 591; *People v Almodovar,* 62 NY2d 126, 132). Because it was the jurors, not the court, which selected the aspect of the charge requiring further instruction, any emphasis it received was occasioned by its unavoidable repetition in making a meaningful response to the jury's inquiry *(People v Owens, supra,* at 591).

Finally, any error which might have been committed must be deemed harmless in view of the overwhelming evidence of

defendant's guilt *(People v Moore,* 71 NY2d 684, 686, *supra)* and in the absence of demonstrated prejudice to defendant in the court's response to the jury's request for supplemental instruction *(People v Almodovar,* 62 NY2d 126, 131-132, *supra; People v DiLuca,* 85 AD2d 439, 446, *supra).*

MILONAS and ELLERIN, JJ., concur with ASCH, J.; CARRO, J. P., and RUBIN, J., dissent in an opinion by RUBIN, J.

Judgment, Supreme Court, Bronx County, rendered on February 9, 1988, reversed, on the law, and the matter remanded for a new trial.