■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v

Dennis R. Shattell, Appellant.—Crew III, J. 

This case involves the death of defendant's three-month-old son on May 19, 1987 as the result of massive head injuries. Defendant was indicted for both intentional and reckless murder of his child and, following a trial, he was convicted of the crime of reckless murder. On appeal defendant contends that the People failed to prove his guilt beyond a reasonable doubt, that expert medical testimony was improperly received at his trial and that he was denied a fair trial due to the improper management of television cameras in the courtroom. There should be an affirmance.

The testimony adduced at trial discloses that defendant, his girlfriend, Linda Palmer, and their infant son were living in an apartment in the Town of Coeymans, Albany County. On May 19, 1987 Palmer woke, fed and diapered the infant before going to her mother's house with the child. She returned to the apartment in the late afternoon and, when defendant came home from work, she went out for a short time with a friend. At all times that day and at the time she left her son with defendant the child appeared healthy, with normal skin tone and natural movement of his arms and legs. At approximately 6:00 P.M. defendant went to a neighbor's apartment complaining that the baby was not breathing properly and an ambulance was called. While he was holding the infant he was overheard to say, "I'm sorry. I didn't mean to do it. My baby." The infant was taken to the hospital where testing revealed a great deal of damage to the brain resulting in hemorrhaging and consequent pressure on the brain stem. While at the hospital defendant told Palmer, "If you say anything they'll put me away forever and we'll never be able to be together again." Palmer then said, "[A]re you saying that you did this to my baby?", and defendant replied, "Yes. But if you say anything we'll never be able to be together again. They'll put me away forever." Two physicians who were present at the autopsy of the infant testified that the child suffered massive injuries to the front and back of the head and to the back. They further testified that they observed bruising in a band around the infant's ankles. One physician opined that the infant had been swung by the ankles and his back and head were struck at least three times against a hard object. The other physician testified that the injuries were consistent with the infant being swung by his

ankles and striking a hard object at least twice. Viewing that evidence in a light most favorable to the People and giving it the benefit of every reasonable inference to be drawn therefrom, there exists overwhelming proof to sustain the jury's verdict *(see, People v Lewis,* 64 NY2d 1111; *People v Wagner,* 51 AD2d 186).

Defendant next contends that it was error to admit the experts' testimony that the infant suffered injuries as the result of being swung by the ankles into or against a hard object. We disagree. The experts' opinions here did not involve opinion evidence on legal issues of ultimate fact *(see, People v McCart,* 157 AD2d 194, *lv denied* 76 NY2d 861), but rather opinions as to the significance of bands of bruising around the ankles most pronounced on the inside and how that related, in their opinion, to the massive head injuries they found. Those facts and the inferences to be drawn therefrom were not necessarily within the ken of the average juror and such opinion was, therefore, admissible *(see, People v McNeeley,* 77 AD2d 205).

Finally, defendant contends that he was denied a fair trial as the result of the mismanagement of television cameras in contravention of County Court's directive. As a result of an application for audio-visual coverage of defendant's trial, County Court directed that the cameras would be located at the rear of the courtroom and would be operated without lights and unobtrusively. Contrary to defendant's assertion, however, there was no direction that the cameras be operated continuously. On one morning of the trial cameras were not in place at the beginning of the proceedings when four prosecution witnesses testified. During a recess the cameras were put in place and the media continued coverage throughout the remainder of the trial. Defendant contends that the jury was thereby compelled to give greater weight to the testimony of the witnesses who testified after the cameras were in place than those who testified before the cameras were set up on that day. While the logic of that proposition is questionable, any such claimed prejudice is entirely speculative and cannot form the basis for a reversal *(cf., People v Whelan,* 165 AD2d 313, *lv denied* 78 NY2d 927).

Mikoll, J. P., Yesawich Jr. and Harvey, JJ., concur. Ordered that the judgment is affirmed.