◾ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DOUGLAS D. DEXHEIMER, Appellant. [625 NYS2d 719] —Peters, J. Appeal from a judgment of the Supreme Court (Ingraham, J.), rendered February 24, 1986 in Chenango County, upon a verdict convicting defendant of the crime of murder in the second degree.

On August 15, 1985 Michelle O'Brien left for work, leaving her 23-month-old child, Melissa, in defendant's sole care and custody. At approximately 1:30 P.M., defendant telephoned

O'Brien at work and asked her to come home immediately. Upon arriving home, defendant told O'Brien that Melissa was dead and that it was his fault. Defendant explained that the child had inexplicably stopped breathing and that he had unsuccessfully attempted to resuscitate her. Paramedics were thereafter called.

Upon initial examination, police officers and the Assistant Medical Examiner noticed various bruises on the child's abdomen and body. As a result of the autopsy performed later that evening, the Medical Examiner confirmed the existence of various bruises and determined that the cause of death was an intraabdominal hemorrhage resulting from a "gaping tear" in the child's mesentery. The Medical Examiner opined that the tear was caused by multiple fist blows to the child's abdomen, as evidenced by fist-patterned bruises.

Although originally providing the police with an exculpatory version of the events, defendant, after being given *Miranda* warnings and upon being confronted with the autopsy results, admitted that he repeatedly hit the child with his fist because she "got on [his] nerves" and because he had "this urge that [he] wanted to hurt her". Defendant thereafter signed a written statement in which he admitted to the above facts. Defendant also admitted that he had struck the child three weeks earlier and that as a result thereof she had to be taken to the hospital because she was having stomach problems and vomiting.[1]

Shortly after defendant's arrest, he wrote a letter to O'Brien in which he expressed remorse for the death of the child and explained that he did not want to hurt her. He further stated that "[t]here was just some rage of anger that built up inside of me. Why, I do not know." Defendant was subsequently indicted on a three-count indictment charging him with the crimes of murder in the second degree (Penal Law § 125.25 [2]), manslaughter in the first degree (Penal Law § 125.20) and manslaughter in the second degree (Penal Law § 125.15). He unsuccessfully moved to suppress his inculpatory oral and written statements.

Following a jury trial, defendant was found guilty of the crime of murder in the second degree. Prior to sentencing, he moved for a new trial alleging that some of the jurors had

---

1. O'Brien was unaware of the earlier incident by defendant. When she took the child to the hospital at that time, she was informed that the symptoms that the child was experiencing were the result of a stomach virus.

taken notes during the trial and that Supreme Court had neglected to give a preliminary instruction on juror note taking. Supreme Court denied the motion and defendant was sentenced to an indeterminate prison term of 20 years to life.[2]

Defendant contends on appeal that there was legally insufficient evidence to support the jury's verdict of murder in the second degree. We disagree. The crime of depraved indifference murder is a nonintentional homicide which requires a showing "that the actor's reckless conduct is imminently dangerous and presents a grave risk of death" *(People v Roe,* 74 NY2d 20, 24). Whether the requisite degree of risk is present depends on whether the acts were committed "[u]nder circumstances evincing a depraved indifference to human life" (Penal Law § 125.25 [2]; *see, People v Roe, supra).* "[T]he assessment of the objective circumstances evincing the actor's 'depraved indifference to human life' * * * is a qualitative judgment to be made by the trier of the facts * * *. If there is evidence which supports the jury's determination, it is this court's obligation to uphold the verdict" *(supra,* at 25 [citations omitted]; *see, People v Tinning,* 142 AD2d 402, 407, *lv denied* 73 NY2d 1022).

Viewing the evidence in the light most favorable to the prosecution *(see, People v Roe, supra; People v Contes,* 60 NY2d 620), and noting that credibility is an issue to be determined by the trier of fact *(People v Tinning, supra,* at 407), we conclude that there was legally sufficient evidence to sustain the jury's verdict. Defendant does not challenge the admissibility of his oral and written inculpatory statements, which alone establish that he repeatedly punched the child in the abdomen with his fists because he had an urge to hurt her and see her in pain. Although defendant initially testified that he did not remember striking the child and thereafter testified that although he did strike her, he could not remember where, how hard or how many times, the medical evidence showed that the fatal injury was not the result of a single isolated blow *(cf., People v Osburn,* 124 AD2d 1048, *lv denied* 69 NY2d 748, 831). Based upon the presence of two fist-patterned bruises, the Medical Examiner testified that the child had been punched at least twice in the abdomen. The presence of internal abdominal scarring constituted medical proof corroborating defendant's admission that he had punched the

---

2. Defendant timely filed a notice of appeal following sentencing. Although his appellate counsel neglected to perfect an appeal in a timely manner, we granted defendant's motion for leave to perfect his appeal.

child in the abdomen three weeks prior to her death. Defendant's testimony further revealed that for approximately 1½ hours after he assaulted her, he failed to summon emergency aid although he was aware that his conduct had severely injured the child who became unresponsive and eventually stopped breathing.

Given such proof, we find that the jury could have rationally concluded, beyond a reasonable doubt, that defendant's conduct in repeatedly punching this 23-month-old, 32½-inch-long, 18 to 20-pound child in the stomach, coupled with his failure to summon emergency aid and his knowledge that his previous assault of the child had necessitated hospital treatment, created a grave risk of death under circumstances evincing a depraved indifference to human life *(see, e.g., People v Shattell,* 179 AD2d 896, *lv denied* 79 NY2d 1007; *People v Curry,* 158 AD2d 466, *lv denied* 75 NY2d 965; *People v Tinning, supra).* As illuminated by the dissent in *People v Van Norstrand* (85 NY2d 131 [Kaye, Ch. J., dissenting]), "[a]t this advanced stage of civilization, we should also be able to state with * * * confidence that reasonable persons are aware that severe physical abuse of a four-month-old infant [here, a 23-month-old infant] creates a grave risk that the infant will die" and thus constitutes a "gross deviation[ ] from the norm" *(supra,* at 137). We conclude that the jury gave the evidence the weight that it should be accorded when it found defendant guilty *(see, People v Bleakley,* 69 NY2d 490).

We further reject defendant's contentions that the prosecutor's remarks during summation constituted reversible error. We note that by failing to raise any objection at trial, defendant has failed to preserve this issue for our review *(see, People v Mena-Coss,* 210 AD2d 745; *People v Rawlings,* 144 AD2d 500). Parenthetically, however, we find that when viewing the prosecutor's remarks in context, many of them are in the nature of rhetorical comment *(see, People v Galloway,* 54 NY2d 396, 399) and that to the extent that the prosecutor vouched for the credibility of its witnesses, such statements were a fair response to defendant's direct attack on their credibility *(see, People v Halm,* 81 NY2d 819, 821; *People v Venditto,* 171 AD2d 952, 954, *lv denied* 78 NY2d 1130). As to any remaining remarks, given the overwhelming evidence of defendant's guilt, including defendant's own inculpatory statements and the lack of a showing of prejudice, we find that any error which might have occurred was harmless *(see, People v Gutkaiss,* 206 AD2d 628, 631, *lv denied* 84 NY2d 936; *People v*

*Blair,* 148 AD2d 767, 768-769, *lv denied* 74 NY2d 661; *see also, People v Crimmins,* 38 NY2d 407).

Similarly unavailing is defendant's contention that County Court improperly denied his request for a new trial based upon juror note taking. The issue as to whether to permit jurors to take notes during a trial is a decision left to the sound discretion of the trial court *(see, People v DiLuca,* 85 AD2d 439, 445). If note taking is permitted, the trial court must give a cautionary instruction *(see, People v Stewart,* 179 AD2d 731, 732, *affd* 81 NY2d 877). Here, defendant never requested such instruction or made any objection regarding juror note taking during the trial. Therefore, such issue is unpreserved for our review *(see, People v White,* 210 AD2d 446; *People v Manning,* 199 AD2d 621, 622, *lv denied* 83 NY2d 855; *People v Stewart, supra,* at 733; People v Buccola, 175 AD2d 601, *lv denied,* 78 NY2d 1010). We do note, however, that during the charge to the jury, Supreme Court did give a comprehensive instruction regarding the use of juror notes *(see, People v Liberatore,* 167 AD2d 425, *lv denied* 78 NY2d 956). Hence, again recognizing the overwhelming proof of defendant's guilt, any error by County Court in failing to give a preliminary instruction constitutes harmless error *(see, People v Stewart, supra).*

Finally, in reviewing defendant's contention that his sentence is harsh and excessive, we find it to be within the statutory range and less than the harshest permissible sentence *(see,* Penal Law § 70.00 [2], [3]). Defendant has failed to present any extraordinary circumstances or apparent abuse of discretion which would warrant action by this Court *(see, People v Tinning,* 142 AD2d 402, 408-409, *supra).*

Mercure, J. P., White, Casey and Spain, JJ., concur. Ordered that the judgment is affirmed.