■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JERRY D. COOPER, Appellant. [639 NYS2d 160] —Mercure, J. P.

This appeal presents a particularly loathsome species of crime where the perpetrator, posing as a home improvement contractor, approaches a vulnerable man or woman, generally of advanced years and living alone, and persuades him or her of the need for various household repairs, renovations and improvements, does the work, which is either wholly unnecessary or performed in an incomplete or grossly unworkmanlike fashion, and imposes a flagrantly excessive charge. In this case, over a period of approximately four months, defendant was able to convince a 79-year-old man to part with $8,000 for new back porch steps, $4,500 for back and front porch roofs, $1,500 to resurface the driveway, $9,000 to paint the porch, trim and garage, and nearly $6,000 for a lightning protection system. In addition, one of defendant's confederates charged the victim $7,000 to remove a few tree limbs and sweep and recoat the top of his garage. Indicted for grand larceny in the third degree (Penal Law § 155.35) based upon a theory of larceny by false promise, convicted after trial, sentenced as a second felony offender to a prison term of 3 to 6 years and ordered to pay restitution of $30,945.81, defendant now appeals.

We affirm. Initially, we reject defendant's contention that the trial evidence was not legally sufficient to convict him of the crime charged. It is now clear that, although a jury may

find a defendant guilty of larceny by false promise only upon "evidence establishing that the facts and circumstances of the case are wholly consistent with guilty intent or belief and wholly inconsistent with innocent intent or belief, and excluding to a moral certainty every hypothesis except that of the defendant's intention or belief that the promise would not be performed" (Penal Law § 155.05 [2] [d]), our review "is limited to assessing whether the inference of wrongful intent logically flowed from the proven facts and whether any valid line of reasoning could lead a rational trier of fact, viewing the evidence in the light most favorable to the People, to conclude that the defendant committed the charged crime" (*People v Norman*, 85 NY2d 609, 620). Applying that standard, we conclude that the evidence competently established the falsity of defendant's implied representation that the contracted work was necessary, that it would be performed in a reasonably competent manner and that the charge imposed therefor would not be substantially in excess of its reasonable value.

Here, the trial evidence provided a graphic portrayal of defendant's predatory scheme. In most cases, defendant would simply appear at the victim's back door (concealed from the view of neighbors or traffic on the street), convince the victim of the need for a particular item of home repair, arrange for others to do the work and then reappear when the work was completed, telling the victim the price and demanding payment in cash. Expert testimony presented by the People established that defendant's charges for the work exceeded the reasonable value thereof by as much as 1,500% (*cf., People v Fangiullos*, 186 AD2d 1007, 1008). Perhaps the most vivid example is presented by defendant's installation of a $5,000 lightning protection system on a house that had never been struck by lightning. On June 24, 1993, defendant appeared at the victim's back door. Defendant advised the victim that, while he had been working on the metal house roof, he noticed a substantial build-up of static electricity, which posed quite a hazard. In fact, he told the victim he had measured the electricity with a meter and obtained a very high reading. Having had the foresight to bring the equipment with him and being in a position to offer the victim quite a bargain because he was "getting out of the business", defendant said he would only charge for the cable, at the rate of $10 per foot. After working for approximately 2 to 3 hours, defendant submitted a bill for $4,987.80, which the victim paid. Defendant then reappeared on July 20, 1993 and advised the victim that he had rechecked the insurance specifications for the system and discovered that four additional grounds were required. Wanting to insure that

he had "a legal system", the victim agreed that defendant should install the grounds, which defendant did for an additional $900.

Defendant's additional arguments do not warrant extended discussion. The contention that County Court erred by allowing jurors to take notes during trial has not been preserved for our consideration (*see, People v Dexheimer*, 214 AD2d 898, 902, *lv denied* 86 NY2d 872; *People v Manning*, 199 AD2d 621, 622, *lv denied* 83 NY2d 855) and, in view of County Court's appropriate cautionary instructions, is found to lack merit in any event (*see, People v Dexheimer, supra*, at 902; *People v DiLuca*, 85 AD2d 439, 445). Finally, County Court did not abuse its discretion in permitting the People, in the event defendant testified, to question him concerning prior larceny criminal convictions without inquiry into the underlying facts (*see, People v Ashley*, 145 AD2d 782, 783; *People v Lawson*, 112 AD2d 457, 461, *lv denied* 66 NY2d 764).

Crew III, Casey, Yesawich Jr. and Spain, JJ., concur. Ordered that the judgment is affirmed.