OPINION OF THE COURT
Hancock, Jr., J.
In defendant’s appeal from his conviction for depraved indifference murder (Penal Law § 125.25 [2])[1] for the shooting death of a 13-year-old boy, the sole question we address is the legal sufficiency of the evidence. Defendant, a 15 Vi-year-old high school student, deliberately loaded a mix of "live” and "dummy” shells at random into the magazine of a 12-gauge shotgun. He pumped a shell into the firing chamber not knowing whether it was a "dummy” or a "live” round. He raised the gun to his shoulder and pointed it directly at the victim, Darrin Seifert, who was standing approximately 10 feet away. As he did so, he exclaimed "Let’s play Polish roulette” and asked "Who is first?”. When he pulled the trigger, the gun discharged sending a "live” round into Darrin’s chest. Darrin died as a result of the massive injuries.
*23 Defendant was convicted after a bench trial and the Appellate Division unanimously affirmed, holding that the evidence was legally sufficient to establish defendant’s guilt. That court concluded, moreover, upon an exercise of its independent factual review power (CPL 470.15 [5]), that the verdict was not against the weight of the evidence. In defendant’s appeal, by permission of a Judge of this court (CPL 460.20 [2] [a] [i]), we address only the central legal issue presented: sufficiency of the proof — i.e., "whether 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt’ (Jackson v Virginia, 443 US 307, 319 [emphasis in original])” (People v Contes, 60 NY2d 620, 621). On our review of the record, we conclude, as did the Appellate Division, that the proof is legally sufficient. Accordingly, there should be an affirmance.
Preliminarily, it must be made clear that defendant does not challenge either the validity of Penal Law § 30.00 (2), or the soundness of the policy underlying the legislative judgment in making persons 13, 14, or 15 years of age criminally responsible as adults for murder in the second degree under Penal Law § 125.25 (1) and (2).[2] Nor does he raise any question concerning the wisdom of the entirely distinct statutory scheme in classifying intentional murder, depraved indifference murder, and felony murder as the same crime — murder in the second degree (see, Penal Law § 125.25).[3] Nevertheless, the dissenter expresses evident dissatisfaction with these legislative measures which, as interpreted, permit the "enormous penological regression” of charging, convicting and sentencing a 15 1/2-year-old defendant, as an adult, for murder in the second degree (dissenting opn, at 29; see also, id,., at 35-38). But whether the Legislature should have classified depraved indifference murder as murder in the second degree and whether *24 it is proper that a person under the age of 16 be held accountable as an adult for this specific crime are questions which do not pertain to the legal issue actually presented to us: is the evidence in this record sufficient to support the verdict under the legislative enactments applicable to the crime in question?
Before analyzing the evidence and its legal sufficiency, a brief examination of the crime of depraved indifference murder and its elements is instructive. Depraved indifference murder, like reckless manslaughter (Penal Law § 125.15 [1]) is a nonintentional homicide. It differs from manslaughter, however, in that it must be shown that the actor’s reckless conduct is imminently dangerous and presents a grave risk of death; in manslaughter, the conduct need only present the lesser "substantial risk” of death (see, People v Register, 60 NY2d 270, 276; see also, People v Gomez, 65 NY2d 9, 11). Whether the lesser risk sufficient for manslaughter is elevated into the very substantial risk present in murder (see, LaFave & Scott, Criminal Law § 70, at 542) depends upon the wantonness of defendant’s acts — i.e., whether they were committed "[u]nder circumstances evincing a depraved indifference to human life” (Penal Law § 125.25 [2]). This is not a mens rea element which focuses "upon the subjective intent of the defendant, as it is with intentional murder (Penal Law, § 125.25, subd 1)”; rather it involves "an objective assessment of the degree of risk presented by defendant’s reckless conduct” (People v Register, supra, at 277; see, People v Gomez, supra, at 11).
The only culpable mental state required for murder under subdivision (2) of Penal Law § 125.25 (depraved indifference murder), we have made clear, is recklessness — the same mental state required for manslaughter, second degree, under subdivision (1) of Penal Law § 125.15 (see, People v Gomez, supra, at 11; People v Register, supra, at 278). In a trial for murder under Penal Law § 125.25 (2), proof of defendant’s subjective mental state is, of course, relevant to the element of recklessness, the basic element required for both manslaughter in the second degree and depraved indifference murder (see, Penal Law § 15.05 [3]). Evidence of the actor’s subjective mental state, however, is not pertinent to a determination of the additional element required for depraved indifference murder: whether the objective circumstances bearing on the nature of a defendant’s reckless conduct are such that the conduct creates a very substantial risk of death (see, People v *25 Register, supra, at 276-277; People v Gomez, 65 NY2d 9, 11, supra).
Generally, the assessment of the objective circumstances evincing the actor’s "depraved indifference to human life”— i.e., those which elevate the risk to the gravity required for a murder conviction — is a qualitative judgment to be made by the trier of the facts (see, People v Register, supra, at 274-275; see also, People v Gomez, supra, at 12). If there is evidence which supports the jury’s determination, it is this court’s obligation to uphold the verdict (see, People v Contes, 60 NY2d 620, 621, supra). Examples of conduct which have been held sufficient to justify a jury’s finding of depraved indifference include: driving an automobile on a city sidewalk at excessive speeds and striking a pedestrian without applying the brakes (see, People v Gomez, supra, at 12);[4] firing several bullets into a house (see, People v Jernatowski, 238 NY 188; see also, People v Register, supra); continually beating an infant over a five-day period (see, People v Poplis, 30 NY2d 85); and playing "Russian roulette” with one "live” shell in a six-cylinder gun (see, Commonwealth v Malone, 354 Pa 180, 47 A2d 445; 2 LaFave & Scott, Substantive Criminal Law § 7.4, at 202; see also, People v Jefferson, 748 P2d 1223, 1227 [Colo]; State v Boone, 294 Ore 630, 661 P2d 917, 920; Neitzel v State, 655 P2d 325 [Alaska]).
With this background, we turn to the issue before us, now more fully stated: whether, viewing the evidence in the light most favorable to the People, any rational trier of the fact could have concluded that the objective circumstances surrounding defendant’s reckless conduct so elevated the gravity of the risk created as to evince the depraved indifference to human life necessary to sustain the murder conviction (see, People v Contes, supra). A brief summary of the evidence is necessary.
On the afternoon of August 14, 1984, the day of the shooting, defendant was at his home in the Village of Buchanan, Westchester County. There is uncontraverted proof that defendant, who had completed his first year in high school, had an intense interest in and detailed knowledge of weapons, includ *26 ing firearms of various kinds.[5] He was familiar with his father’s 12-gauge shotgun and, indeed, had cleaned it approximately 50 times. The cleaning process involved oiling the firing pin and pulling the trigger, using a "dummy” shell to avoid "dry firing” the weapon.[6]
At approximately 3:00 p.m., Darrin and his friend, Dennis Bleakley, also a 13 year old, stopped by to await the arrival of Darrin’s older brother who was expected shortly. Defendant entertained the two boys by showing them his sawed-off shotgun, gravity knife, and Chuka sticks which he kept in a bag under his bed; he demonstrated how he assembled and disassembled the sawed-off shotgun.
Defendant then escorted Darrin and Dennis to his parents’ room where he took out his father’s 12-gauge shotgun. He asked Darrin to go back to his bedroom to get the five shotgun shells which were on the shelf. Defendant knew that three of these shells were "live” and two were "dummies”. He randomly loaded four of the five shells into the magazine and pumped the shotgun, thereby placing one shell in the firing chamber. Because he loaded the magazine without any regard to the order in which the shells were inserted, he did not know if he had chambered a "live” or "dummy” round.
It was at this point, according to Dennis’s testimony, that defendant raised the shotgun, pointed it directly at Darrin, and said "Let’s play Polish roulette. Who is first?” He pulled the trigger discharging a "live” round which struck the 82-pound Darrin at close range. The shot created a gaping wound in Darrin’s upper right chest, destroyed most of his shoulder, produced extensive damage to his lung, and eventually caused his death.
Defendant disputed this version of the incident. He testified *27 that he had one foot on his parents’ bed and was resting the butt of the gun on his inner thigh with the barrel pointing up and away from the victim. While he was demonstrating how the gun worked, he claimed, his foot slipped and the shotgun became airborne momentarily. Defendant testified that when he attempted to catch the gun, the butt kicked up under his armpit and he accidentally hit the trigger and discharged the gun.
The evidence of the objective circumstances surrounding defendant’s point-blank discharge of the shotgun is, in our view, sufficient to support a finding of the very serious risk of death required for depraved indifference murder. Because the escalating factor — depraved indifference to human life — is based on an objective assessment of the circumstances surrounding the act of shooting and not the mens rea of the actor (see, People v Register, supra, at 276-277), the evidence stressed by the dissent concerning defendant’s mens rea — his emotional condition in the aftermath of the killing (see, dissenting opn, at 32, 33-34) — is beside the point.[7] Also without relevance are the dissent’s references to defendant’s claimed ignorance concerning the order in which cartridges, once loaded in the magazine, would enter the firing chamber (see, dissenting opn, at 32, 33). Such lack of knowledge can make no difference when, as is concededly the case here, the shooter knowingly loaded the mix of "live” and "dummy” cartridges with no regard to the order of their insertion into the magazine.
The comparable case here is not that of a person, uneducated in use of weapons, who, while playing with a gun that he does not know is loaded, accidentally discharges it; rather, the apt analogy is a macabre game of chance where the victim’s fate — life or death — may be decreed by the flip of a coin or a roll of a die. It is no different where the odds are even that the shell pumped into the firing chamber of a 12- *28 gauge shotgun is a "live” round, the gun is aimed at the victim standing close by, and the trigger is pulled (see, 2 LaFave & Scott, Substantive Criminal Law § 7.4, at 202 ["Russian roulette” with one "live” shell in a six-chamber gun is a classic example of depraved indifference murder]).
The sheer enormity of the act — putting another’s life at such grave peril in this fashion — is not diminished because the sponsor of the game is a youth of 15. As in Register, where bullets which might kill or seriously injure someone, or hit no one at all, were fired at random into a crowded bar, the imminent risk of death was present here. That in one case the gamble is that a bullet might not hit anyone and in the other that the gun might not fire is of no moment. In each case, the fact finder could properly conclude that the conduct was so wanton as to amount to depraved indifference to human life.
It is conceivable that another trier of fact hearing this evidence could have been persuaded to arrive at a different verdict. From the dissenter’s extensive discussion of the proof and the inferences he would draw therefrom, it is evident that he would have done. so. Our proper function on appeal, however, is vastly different from that of the prosecutor in determining which crimes to charge, that of the Judge or jury in hearing the evidence and making factual conclusions, or that of the Appellate Division in reviewing the facts and exercising, where it chooses, its interest of justice jurisdiction. We do not find facts or exercise such discretion. Our sole authority is to review legal questions such as the one considered here: whether the evidence was legally insufficient. As to this question, we have little difficulty in concluding that the unanimous Appellate Division correctly held that the evidence was sufficient to support the verdict.
Finally, we must comment briefly on the dissent’s observation, not raised by defendant, that juveniles, charged as adults under Penal Law § 30.00, are denied the same rights afforded adults (see, dissenting opn, at 38). This is just not so. A juvenile is entitled to the same lesser included offense charges as an adult (see, CPL 300.50 [5]). If he is convicted of only a lesser offense for which he is not criminally responsible by reason of infancy (see, Penal Law § 30.00), that conviction is vacated and replaced by a juvenile delinquency fact determination and the matter removed to Family Court (see, CPL 310.85 [3]; art 725). Thus, the statutory scheme does not create a "boomerang” which "catches [defendant] in a remarkable *29 dual exception” (dissenting opn, at 37); and a 15 year old is not "in the practical play out, more disadvantaged than an accused adult” (id., at 38).
Defendant’s remaining contentions are either unpreserved or without merit. We note, however, that defendant’s convictions of the crimes charged in counts 2 through 6 of the indictment are not before us. Accordingly, the order of the Appellate Division should be affirmed.

. Penal Law "§ 125.25 Murder in the second degree.
"A person is guilty of murder in the second degree when:
* ** *
"2. Under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person”.

. The statute also provides that persons 14 or 15 years of age who commit certain crimes — e.g., first degree manslaughter, first degree rape, aggravated sexual abuse, and first degree kidnapping — may be tried as adults. Thus, contrary to the assertion of the dissent, the law was not tailored solely to prevent those exceptionally vicious juveniles, such as Willie Bosket, from escaping "the clutches of the adult criminal law” (dissenting opn, at 37-38). Rather, it applies to all 14 or 15 year olds who commit any one of the broad range of crimes enumerated in the statute.

. Nor does defendant raise any issue involving the sufficiency of the evidence before the Grand Jury or the discretionary prosecutorial decision to present a Penal Law § 125.25 (2) charge to the Grand Jury and the trier of fact (cf., dissenting opn, at 35-36, 36).

. In attempting to "emphasize the particular escalating depravity facts” in Gomez (dissenting opn, at 30), the dissent overlooks the fact that in Gomez we upheld two counts of depraved indifference murder — one for the first victim struck and one for the second (65 NY2d 9, 12). Thus, we obviously did not find it necessary that one person be struck first for the conduct to constitute depraved indifference.

. In addition to proof that defendant had handled and used his sawed-off shotgun and his father’s shotgun, the People introduced evidence that defendant had previously used a .22-caliber rifle, an air rifle, a .22-caliber air pistol, and a BB gun. Defendant had read magazine articles and books concerning guns, given several speeches in school about weapons, and drawn pictures of various guns. This evidence was admissible to prove recklessness —i.e., that defendant was aware of the risks involved — by showing that he was familiar with weapons in general and with this gun in particular (see, People v Licitra, 47 NY2d 554, 559; People v Stanfield, 36 NY2d 467, 471-472).

. According to defendant, "dry firing” is releasing the firing pin when there is no cartridge in the chamber and nothing for the pin to strike against. To avoid the damage to the pin which "dry firing” can cause, "dummy” cartridges are used.

. 2 LaFave & Scott, Substantive Criminal Law § 7.4 (b), at 204-205, cited by the dissent (see, dissenting opn, at 34) is not to the contrary. Evidence of defendant’s conduct and emotional state after the shooting might be relevant to show his subjective awareness of the risk — an element essential to establish the underlying mens rea of recklessness (see, Penal Law § 15.05 [3]; 2 LaFave & Scott, op. cit., at 204-205). Here, however, there is no dispute that defendant acted recklessly (see, dissenting opn, at 33). The only question is whether the crime conduct creates the very substantial risk of death necessary for depraved indifference. Gomez and Register make it clear that this element is to be objectively assessed and that defendant’s subjective mens rea is not relevant on this point (People v Gomez, 69 NY2d 9, 11; People v Register, 60 NY2d 270, 277).