■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MIRIAM McKENZIE, Appellant.—Judgment, Supreme Court, New York County (Alfred H. Kleiman, J.), rendered March 16, 1989, convicting defendant, after a jury trial, of murder in the second degree, and sentencing her to a term of imprisonment of 20 years to life, unanimously affirmed.

Evidence at trial was that on March 22, 1988, defendant's three year old son Quentin died after having been forcefully immersed waist-deep in scalding water of approximately 133 degrees Fahrenheit for at least several minutes, causing second and third degree burns covering 55% of his body. Police responding to a 6:30 P.M. radio call of a child in distress encountered defendant, her infant and 4-year old daughters, and an apparently unconscious Quentin. They attempted in vain to revive the boy, and observed that large pieces of skin had peeled off Quentin's lower body, described as resembling raw meat. Freshly ruptured tissue connecting Quentin's upper jaw and lower lip indicated that a gag of cloth might have been forced into the child's mouth at, or shortly before, his death.

Defendant, testifying in her own behalf, said that she had been sleeping periodically during the day and had awakened at about 2:00 P.M. to find that Quentin had dirtied himself. She turned on the hot and cold water in the bathtub and then left the bathroom for approximately a half hour to feed her infant daughter. When she returned, she found Quentin sitting in the tub of water, from which steam was rising. Although defendant realized that Quentin was seriously hurt, other than to put the child under cold water, give him food and water, and telephone her husband at his work place to ask him to come home because Quentin had been burned, defendant did nothing to aid her son.

Contrary to defendant's claim on appeal, the evidence at trial, viewed in the light most favorable to the prosecution and giving it the benefit of every reasonable inference *(People v Malizia,* 62 NY2d 755, *cert denied* 469 US 932), overwhelmingly supports the jury's determination of defendant's guilt beyond a reasonable doubt of murder in the second degree, under the depraved indifference to human life standard *(see, People v Bleakley,* 69 NY2d 490). Considering the expert testimony of forceful immersion, the obvious degree of the burns suffered by Quentin, and the failure of defendant to provide adequate medical care for her son *(see, Matter of Hofbauer,* 47 NY2d 648, 654-655), the jury reasonably concluded that defendant engaged in imminently dangerous, reckless conduct that presented a grave risk of death and, indeed, resulted in Quentin's death *(see, People v Roe,* 74 NY2d 20, 24).

The hearing court properly denied suppression of defendant's statements made to the police when they arrived at her residence. The officers, believing that they were responding to

the scene of a terrible accident, simply asked defendant what had happened in an attempt to clarify the situation *(see, e.g., People v Huffman,* 41 NY2d 29). In the circumstances herein, a reasonable person innocent of any crime would hardly have considered herself to be in police custody *(see, supra,* at 32).

Likewise, the hearing court properly denied suppression of two additional statements made by defendant at the police precinct. Defendant voluntarily agreed to accompany the police to the precinct for questioning by an officer assigned to investigate the circumstances of Quentin's death. She was not handcuffed or restrained in any way and, indeed, moved about freely at the precinct, watching television, visiting the lunchroom and tending to the needs of her two daughters who were with her as her account of the accidental nature of her son's death by his own actions was reduced to writing. These circumstances indicate that the police questioning was merely investigatory, and not custodial in nature *(see, People v Winchell,* 64 NY2d 826, 827). Additionally, *Miranda* warnings were duly administered following defendant's second statement made at the precinct, when she told the investigating officer that she had actually put Quentin in the bathtub to bathe himself and had then left the bathroom to feed her infant daughter, thus changing defendant's status from witness to suspect *(supra).*

We have considered defendant's additional claims and find them to be both unpreserved and without merit. Concur— Milonas, J. P., Ellerin, Kupferman, Ross and Smith, JJ.