10-4478-pr
Gutierrez v. Smith

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2011

(Argued: February 17, 2012    Decided: December 11, 2012)

Docket No. 10-4478-pr

———————————————

OMAR GUTIERREZ,

*Petitioner-Appellant*,

– v. –

JOSEPH SMITH,

*Respondent-Appellee*.

———————————————

Before: JACOBS, *Chief Judge*, CALABRESI and POOLER, *Circuit Judges*.

Omar Gutierrez appeals from the denial of a petition for a writ of habeas corpus in which he argued that the evidence at trial was insufficient to support his conviction for depraved indifference murder under New York law. The district court (Feuerstein, *J.*), of the Eastern District of New York denied the petition as procedurally barred. On review, we find that Gutierrez's claim was preserved for habeas review, but we hold that Gutierrez's legal insufficiency claim fails on the merits. For this reason, we AFFIRM the judgment of the district court.

> JACQUELINE P. RUBIN (Janna Berke, *on the brief*), Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, N.Y., *for Petitioner-Appellant*.
>
> GLENN GREEN, Assistant District Attorney, *for* Thomas J. Spota, District Attorney, Suffolk County, Riverhead, N.Y., *for Respondent-Appellee*.

———————————————

CALABRESI, *Circuit Judge*:

During a bar brawl, Petitioner-Appellant Omar Gutierrez fatally stabbed John Villaplana in the chest. Gutierrez was convicted of depraved indifference murder under New York Penal Law § 125.25(2), and sentenced to twenty-five years to life in prison. After the Appellate Division affirmed Gutierrez's conviction and his application for leave to appeal to the New York Court of Appeals was denied, Gutierrez filed a timely petition for a writ of habeas corpus in the United States District Court for the Eastern District of New York. In his petition, Gutierrez argued, *inter alia*, that the evidence introduced at trial was legally insufficient to support his conviction. The district court (Feuerstein, *J.*), relying on the state court's finding that counsel failed to make a contemporaneous objection at trial to the legal sufficiency of the evidence, dismissed the petition as procedurally barred.

Although the claim was barred under state law, we believe that it is nonetheless cognizable on habeas review. Because there was a fundamental shift in New York's interpretation of its depraved indifference murder statute between the time of Gutierrez's trial in 2001 and the time his conviction became final in 2005, the legal basis for a sufficiency challenge was not reasonably available to counsel at the time of trial. We conclude, therefore, that this doctrinal shift constitutes an appropriate "cause" for the failure to object, and we therefore reach the merits of Petitioner's claim.

Our review of the merits raises a troubled issue of New York law: just how much of what kind of evidence supports depraved indifference convictions in New York. Nevertheless, for reasons we will explain in Section II.C of this opinion we believe that certification is not appropriate in this case and, based on the limited New York precedents available to us, we hold that a reasonable jury could have found that the evidence at trial did

establish the necessary elements of depraved indifference murder. We therefore AFFIRM the judgment of the district court.

## I.   BACKGROUND

### A. Factual Background and Procedural History

On June 13, 1999, Petitioner Omar Gutierrez was involved in a bar brawl in Montauk, Long Island. Gutierrez was at Rick's Crabby Cowboy Cafe ("Rick's") when a fight broke out between different groups of patrons. The fight escalated and later continued in Rick's parking lot where Gutierrez produced his knife and threatened a group of men. In his written confession, Gutierrez described how he "accidentally stabbed someone" who ran into his knife. This victim, Narcisso Luis Villaplana, survived his injuries, but he could provide no direct testimony at trial about the stabbing.

Gutierrez and three others then pursued John Villaplana to a nearby driveway. There, Gutierrez fatally stabbed John in the chest, producing two wound tracks. According to trial testimony, Gutierrez fled the scene when a car approached, while John Villaplana was still standing. Though John Villaplana also sustained an injury as a result of striking his head on the ground, autopsy results confirmed that a stab wound caused his death.

Gutierrez was charged with: (a) murder in the second degree in violation of New York Penal Law § 125.25(1) (intentional murder) and New York Penal Law § 125.25(2) (depraved indifference murder) in connection with John Villaplana's fatal stabbing, and (b) assault in the third degree in violation of New York Penal Law § 120.00(2) in connection with Narcisso Luis Villaplana's stabbing. At trial, Gutierrez's counsel moved to dismiss the depraved indifference murder charge on the ground that, "as a matter of law, . . . there [was] insufficient evidence to prove a prima facie case." The trial judge denied the motion, and

the jury convicted Gutierrez of depraved indifference murder and assault in the third degree, but acquitted him of intentional murder. Gutierrez was sentenced to an indeterminate term of imprisonment of twenty-five years to life on the depraved indifference conviction and to a concurrent determinate term of imprisonment of one year on the assault conviction.

On direct appeal, Petitioner argued, *inter alia*, that there was insufficient evidence to support a depraved indifference murder conviction and that New York Penal Law § 125.25(2) was unconstitutionally vague. On February 14, 2005, the Appellate Division affirmed Gutierrez's conviction and sentence, concluding that his legal insufficiency claim was "unpreserved for appellate review," that his conviction for depraved indifference murder was "not against the weight of the evidence," and that some of Gutierrez's other contentions were "either . . . unpreserved for appellate review or without merit." *People v. Gutierrez*, 790 N.Y.S.2d 493, 494 (2d Dep't 2005). On June 14, 2005, Judge Smith, of the New York Court of Appeals, denied Gutierrez's application for leave to appeal to that court. *See People v. Gutierrez*, 5 N.Y.3d 763 (2005).

On September 12, 2006, pursuant to New York Criminal Procedure Law § 440.10, Gutierrez filed a motion to vacate his conviction. After the trial court denied the motion, *see People v. Gutierrez*, 836 N.Y.S.2d 488 (Suffolk Cnty. Ct. 2007) (unpublished table decision), and the Appellate Division affirmed, *see People* v. *Gutierrez*, 871 N.Y.S.2d 2d 325 (2d Dep't 2008), Judge Smith, of the New York Court of Appeals, again denied Gutierrez's application for leave to appeal to that court, *see People v. Gutierrez*, 12 N.Y.3d 816 (2009).

On September 12, 2006, Gutierrez also filed a petition for a writ of habeas corpus with the federal district court of the Eastern District of New York pursuant to 28 U.S.C. § 2254. The district court initially stayed the proceedings to permit Gutierrez to pursue his

section 440.10 motion, after which Gutierrez filed an amended petition, arguing: (1) that the evidence presented at trial was legally insufficient to support his conviction for depraved indifference murder; (2) that his trial counsel was ineffective because he failed to make a specific objection to the legal insufficiency of the evidence at trial; and (3) that New York Penal Law § 125.25(2) was unconstitutionally vague. *See Gutierrez v. Smith*, No. 06-CV-4939, 2010 U.S. Dist. LEXIS 102137, at *8 (E.D.N.Y. Sept. 27, 2010). In September 2010, the district court denied Gutierrez's petition and declined to issue a certificate of appealability. *See id.* at *30-*31. On March 16, 2011, we granted Gutierrez's motion for a certificate of appealability "with respect to [Gutierrez's] claim that the evidence was legally insufficient to support his conviction for depraved indifference murder in violation of New York Penal Law § 125.25(2)."

**B. The Evolution of "Depraved Indifference" Law in New York**

"Depraved indifference" murder is a type of second degree murder in New York. Specifically, New York Penal Law § 125.25(2) provides that a person is guilty of murder in the second degree when "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

At the time of Gutierrez's trial in 2001, the law on depraved indifference murder was governed by *People v. Register*, 60 N.Y.2d 270 (1983). In *Register*, the defendant entered a crowded bar with a loaded gun. *Id.* at 273. After entering the bar and threatening to "kill somebody," *id.* at 275, he ultimately killed one man and seriously injured two others, *id*. at 273-74. In upholding the trial court's refusal to instruct the jury that the defendant's intoxication could negate a showing of depraved indifference, the Court noted that "the

focus of the offense is not upon the subjective intent of the defendant, as it is with intentional murder, but rather upon an objective assessment of the degree of risk presented by defendant's reckless conduct." *Id.* at 277 (citations omitted).

In the years after Gutierrez's trial but before his conviction became final in 2005,[1] New York moved away from *Register*'s holding. During this period, new case law suggested that conviction for depraved indifference murder did require proof of a mental state of recklessness. Accordingly, strong proof of the defendant's intent to murder the victim would be inconsistent with a conviction for depraved indifference murder. The New York Court of Appeals, in order to clarify when the facts of a case would tend to evince intentional as opposed to reckless murder, also began to define more narrowly the circumstances in which a depraved indifference charge would be appropriate. *See Policano v. Herbert*, 7 N.Y.3d 588, 595 (2006).

According to the Court of Appeals, the law as articulated in *Register* "remained static" until its decision in *People v. Sanchez*, 98 N.Y.2d 373 (2002). *Policano v. Herbert*, 7 N.Y.3d 588, 595 (2006). Critically, *Sanchez* was decided in 2002, after Gutierrez's trial and conviction, but, as we have noted, before that conviction became final. In *Sanchez*, a 4–3 decision, the Court of Appeals rejected the defendant's argument that his conduct "was consistent only with an intentional killing" and therefore could not sustain a conviction for depraved indifference murder. 98 N.Y.2d at 376. The Court thus reaffirmed *Register*, reiterating that "the requirement of circumstances evincing a depraved indifference to human life under [New York] Penal Law § 125.25 (2) murder focuses not on the subjective

---

[1] In New York, a defendant's conviction becomes final ninety days after leave to appeal to the Court of Appeals is denied. *See Fernandez v. Artuz*, 402 F.3d 111, 112 (2d Cir. 2005). Here, the Appellate Division affirmed Gutierrez's conviction on February 14, 2005, and Judge Smith of the Court of Appeals denied leave to appeal to that court on June 14, 2005, so the conviction was final on September 12, 2005.

6

intent of the defendant, 'but rather upon an objective assessment of the degree of risk presented by defendant's reckless conduct.'" *Id.* at 379-80 (quoting *Register*, 60 N.Y.2d at 277). In time, however, *Sanchez* proved more notable for the three separate dissents in the seven-person Court of Appeals than for its majority opinion. Two of the dissents, emphasizing "the problems attendant to using a charge of depraved indifference as a proxy for intentional murder," *id.* at 388 (Smith, J., dissenting), would have "overrule[d] *Register* expressly and restore[d] depraved indifference as the key mens rea element," *id.* at 415 (Rosenblatt, J., dissenting).

After *Sanchez*, while Gutierrez's case was on direct appeal, New York law continued to evolve. Three cases in particular—*People v. Hafeez*, 100 N.Y.2d 253 (2003), *People v. Gonzalez*, 1 N.Y.3d 464 (2004), and *People v. Payne*, 3 N.Y.3d 266 (2004), all decided before Gutierrez's conviction became final on September 12, 2005—moved New York law away from the holding in *Register*.

In *Hafeez*, decided on June 10, 2003, which involved yet another incident at a bar, the Court of Appeals held that a codefendant's "conduct was consistent with intentional murder as opposed to depraved indifference murder." 100 N.Y.2d at 258.

In *Gonzales*, decided on March 25, 2004, the court again found the evidence legally insufficient to support a conviction for depraved indifference murder, and held that "[t]he only reasonable view of the evidence here was that defendant intentionally killed the victim by aiming a gun directly at him and shooting him 10 times at close range, even after he had fallen to the ground." 1 N.Y.3d at 467. The Court reasoned that "a person cannot act both intentionally and recklessly with respect to the same result," *id.* at 468, and that when "a defendant's conduct is specifically designed to cause the death of the victim, it simply

7

cannot be said that the defendant is indifferent to the consequences of his or her conduct," *id.* at 467. The Court further explained that "[d]epraved indifference murder does not mean an extremely, even heinously, intentional killing," but instead "involves a killing in which the defendant does not have a conscious objective to cause death but instead is recklessly indifferent, depravedly so, to whether death occurs." *Id.* at 468.

In *Payne*, decided on October 19, 2004, the Court of Appeals began to clarify when a fact pattern could support an inference of depraved indifference murder and when it could not. The *Payne* Court held that it was reversible error for the trial court to have submitted the count of depraved indifference murder to the jury because no reasonable view of the evidence could support the theory that the "point blank shooting" which was "directed at a single individual" was reckless. 3 N.Y.3d at 270, 271. The archetypal depraved indifference murder, the court explained, would resemble "shooting into a crowd, placing a time bomb in a public place, or opening the door of the lions' cage in the zoo." 3 N.Y.3d at 272. By contrast, "[a]bsent the type of circumstances in, for example, *Sanchez* (where others were endangered), a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder." *Id*. In a footnote, the court noted a "rare exception—the only one in our decisional law" to this principle. 3 N.Y.3d at 272 n.2. In that exceptional case, *People v. Roe*, 74 N.Y.2d 20, 22 (1989), the defendant killed the victim during a game of "Polish roulette," in which he loaded a gun with both real and dummy rounds of ammunition and then pointed the gun at the victim and pulled the trigger.[2]

---

[2] In a single paragraph toward the end of the majority opinion, the Court mentioned that it had recognized "another species of depraved indifference murder" involving one-on-one killings, but that in these, the acts of the defendant "are marked by uncommon brutality—coupled not with an intent to kill…, but with depraved indifference to the victim's plight." *Payne*, 3 N.Y.3d at 271. To illustrate this subset of depraved indifference cases in which the defendant targeted an individual victim, the Court cited several cases involving child abuse, and one case in which a thief abandoned the victim of his robbery to virtually certain death. *Id.* at 272.

8

After Gutierrez's conviction became final on September 12, 2005, the Court of Appeals reviewed its own precedents to provide further guidance on when a one-on-one killing could count as a depraved indifference murder, and described several broad categories of one-on-one killings that would qualify. *People v. Suarez*, decided on December 22, 2005, underscored *Payne* and held that "a defendant who intends to injure or kill a particular person cannot generally be said to be 'indifferent'—depravedly or otherwise—to the fate of that person." 6 N.Y.3d 202, 211 (2005). But the Court identified two recurring fact patterns in which a one-on-one killing would be properly categorized as a depraved indifference murder: First, when the defendant "intends neither to seriously injure, nor to kill, but nevertheless abandons a helpless and vulnerable victim in circumstances where the victim is highly likely to die"; and second, when the "defendant—acting with a conscious objective not to kill but to harm—engages in torture or a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim." *Id.* at 212. The Court also pointed to a third category: "extraordinary cases involving conduct that endangered only one person, where the evidence showed not just recklessness, but depraved indifference to human life." *Id.* at 213. As an example, the court pointed to *Roe*, the "Polish roulette" case cited in *Payne*, but left this category otherwise undefined.

Finally, the development which began with the dissents in *Sanchez* culminated in *People v. Feingold*, decided on July 5, 2006. 7 N.Y.3d 288 (2006). In *Feingold*, by expressly overruling *Register* and *Sanchez* and holding that depraved indifference referred to a mental state, the Court of Appeals made explicit what its recent opinions had implied. *Id.* at 294.

9

Surveying its case law beginning with *Hafeez*, the Court concluded that "the law ha[d] changed to such an extent" that *Register* and *Sanchez* "should no longer be followed." *Id.*

## II.   DISCUSSION

We review a district court's ruling on a habeas petition *de novo*. *See Thibodeau v. Portuondo*, 486 F.3d 61, 64 (2d Cir. 2007).

### A. Procedural Default

New York's contemporaneous objection rule requires a party to object to what he or she believes is a legal error in a trial court's ruling or instruction "at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same." N.Y. Crim. Proc. Law § 470.05(2). Where a party fails to lodge such a contemporaneous objection, the issue is unpreserved for appeal because of the party's procedural default. "If a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his failure to comply with such a 'contemporaneous objection' rule, a federal court generally may not consider the merits of the constitutional claim on habeas corpus review." *Peterson v. Scully*, 896 F.2d 661, 663 (2d Cir. 1990) (citing *Wainwright v. Sykes*, 433 U.S. 72, 86–87 (1977)); *see also Harris v. Reed*, 489 U.S. 255, 260 (1989) (explaining that federal habeas review is barred if the constitutional claim was denied by a state court on a state procedural "ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision").

The Supreme Court, however, has carved out two exceptions to this bar on habeas review of procedurally defaulted claims. "Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the petitioner can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually

10

innocent.'" *DiSimone v. Phillips*, 461 F.3d 181, 190 (2d Cir. 2006) (brackets omitted) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)); *see also Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986).

Gutierrez concedes that his counsel lodged just a general objection to the legal sufficiency of the evidence at trial, *Gutierrez*, 2010 U.S. Dist. LEXIS 102137, at *4 n.3, which the Appellate Division deemed insufficient to preserve the issue for appellate review, *Gutierrez*, 15 A.D.3d at 503. On habeas review, therefore, we can reach the merits of Gutierrez's legal insufficiency claim only if he can establish either "cause" and "prejudice" or "actual innocence." In our judgment, Gutierrez adequately demonstrates both "cause" for his trial counsel's failure to lodge a specific objection, and "prejudice" from that failure.[3]

There are two related ways to establish "cause." First, the cause requirement is met if some objective factor, external to Petitioner's defense, interfered with his ability to comply with the state's procedural rule. *See McCleskey v. Zant*, 499 U.S. 467, 493 (1991). An example of such an objective impediment is "a showing that the factual or legal basis for a claim was not reasonably available to counsel" at the time of trial. *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999). Second, futility may constitute cause "where prior state case law has consistently rejected a particular constitutional claim." *DiSimone*, 461 F.3d at 191. But "futility cannot constitute cause if it means simply that a claim was unacceptable to that

---

[3] For purposes of this case, we are assuming arguendo that the contention of actual innocence made by Petitioner would fail. We do this because we find cause and prejudice and need not find a successful claim of actual innocence in order to excuse the procedural bar. We note, however, that the issue of actual innocence in circumstances like the one before us has been treated differently by various federal courts. *See generally Schlup v. Delo*, 513 U.S. 298 (1995). *Compare Johnson v. Bellnier*, No. 09-CV-00381 (KAM) (RER), 2011 U.S. Dist. LEXIS 82104, at *30-44 (E.D.N.Y. July 27, 2011), *and Fernandez v. Smith*, 558 F. Supp. 2d 480, 494 (S.D.N.Y. 2008), *with Gutierrez v. Smith*, No. 06-cv-4939, 2010 U.S. Dist. LEXIS 102137, at *23-30 (E.D.N.Y. Sept. 27, 2010), *and Orcutt v. Fillion*, No. 09-cv-205, 2010 U.S. Dist. LEXIS 66962, at *14-17 (N.D.N.Y. June 9, 2010), *report and recommendation adopted by* 2010 U.S. Dist. LEXIS 66975 (N.D.N.Y. July 6, 2010).

particular court at that particular time." *Bousley v. United States*, 523 U.S. 624, 623 (1998) (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)) (internal quotation marks omitted).

The "prejudice" requirement is met by establishing "actual prejudice resulting from the errors of which [Petitioner] complains." *United States v. Frady*, 456 U.S. 152, 168 (1982) (internal quotation marks omitted). The error must have resulted in "substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (quoting *Frady*, 456 U.S. at 170).

On appeal, Gutierrez offers two explanations for counsel's failure to object specifically to the legal sufficiency of his depraved indifference murder conviction. He argues that any objection by counsel would have been futile because the controlling law, *i.e.*, *Register*, would have rendered the objection baseless. He also asserts that the legal basis of his claim was unavailable at the time of trial and that this constituted an objective factor external to his defense. In this case, the same substantive argument underlies both claims.

These "cause" arguments are both predicated on the claim (a) that New York law on depraved indifference murder changed drastically after Gutierrez's trial in 2001, and (b) that he should not be penalized for his failure to anticipate that change. Gutierrez's trial was held in 2001, before *Sanchez* was decided, before the appellate courts reversed the convictions in *Hafeez* and *Gonzalez*, and when *Register* was unquestionably still considered the law of New York. Given that the *Register* interpretation was firmly ingrained in New York at the time of Petitioner's trial in 2001, we are persuaded that a legal sufficiency objection by Gutierrez would have been futile.

Similarly, as *Register* still controlled, the legal basis for a sufficiency claim was not available to counsel at the time of Gutierrez's trial. When Gutierrez was tried, counsel could

not be obliged to challenge preemptively the conviction based on what then was an unlikely development in the law. The shift in New York law that occurred after Petitioner's trial constituted an "objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Strickler*, 527 U.S. at 283 n.24 (citation omitted); *see also id.* (noting that "a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . would constitute cause under this standard" (citation omitted)).

We find equally compelling Gutierrez's claim that the "prejudice" requirement is met. The difference between a conviction for murder in the second degree and one for manslaughter is substantial, the former carrying a significantly higher potential term of imprisonment. Thus, the submission of a depraved indifference murder charge to the jury, if that charge was in error, worked to Petitioner's "actual and substantial disadvantage." *Roccisano v. Menifee*, 293 F.3d 51, 59 (2d Cir. 2002) (emphasis omitted).

For these reasons, we believe that on the facts of this case, the matter was preserved.[4] We now turn to the merits of the appeal.

**B. Merits of Gutierrez's Legal Insufficiency Claim**

When reviewing appeals challenging the sufficiency of the evidence supporting a state-court criminal conviction, we are not retrying the case, nor are we second-guessing the state court's interpretation of its own law. Rather, we review the decision of the state court under the federal sufficiency standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012). The relevant question under *Jackson* is whether, "after viewing the evidence in the light most favorable to the

---

[4] Although the panel has decided that the matter was preserved, the author of this opinion believes that because we are affirming on the merits, this conclusion is not necessary to the ultimate result we reach.

13

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. When considering the sufficiency of the evidence of such a state conviction, a federal court "must consider the evidence in the light most favorable to the prosecution and make all inferences in its favor," and, in doing this, "must look to state law to determine the elements of the crime." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (internal quotation marks omitted).

A person is guilty of depraved indifference murder when, "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. Penal Law § 125.25(2). Gutierrez's argument that convicting him of depraved indifference murder violates federal due process relies on his interpretation of the three New York Court of Appeals cases, *Hafeez*, *Gonzalez*, and *Payne*, that began to define and limit the circumstances from which a jury could draw a valid inference that a killer had the *mens rea* required for depraved indifference. The opinion in *Payne* included the court's observation that "a one-on-one shooting *or knifing* . . . can almost never qualify as depraved indifference murder." *Payne*, 3 N.Y.3d at 272 (emphasis added). Gutierrez reads this to mean that under New York law, a one-on-one, face-to-face fatal assault is categorically intentional, and he contends that when he stabbed a single individual in the chest, he engaged in intentional conduct that is necessarily inconsistent with the *mens rea* needed for depraved indifference murder. But our reading of New York precedents does not lead to such an unambiguous result.

We believe that the three depraved indifference cases decided before Gutierrez's conviction became final (*Hafeez*, *Gonzalez*, and *Payne*) do not compel the conclusion that a

one-on-one stabbing or shooting is always intentional. True, they involved one-on-one killings; at the same time, however, the killings in these three cases were unquestionably intentional. In *Hafeez*, the defendant's conviction as an accomplice to a murder depended on proof that his co-defendant, the actual killer, had the necessary mental state for depraved indifference murder. But on review, the New York Court of Appeals concluded that this was "a quintessentially intentional attack." 100 N.Y. 2d at 258. His co-defendant had "plotted his revenge for months in advance and . . . [schemed] to place the victim in a position where he would be vulnerable to attack." *Id.* On the night of the attack, the killer concealed a weapon on his person and then leapt out at the victim, killing him with "a single deliberate wound to the chest that perforated the victim's heart." *Id*. Based on these facts, the court found, "there exist[ed] no valid line of reasoning that could support a jury's conclusion that [the] defendant possessed the mental culpability required for depraved indifference murder," which was at the time recklessness. *Id*. at 259. In *Gonzalez*, the defendant saw his victim, a man with whom he had a longstanding dispute, in a barber shop. He briefly left the shop, and then returned to shoot the victim ten times. 1 N.Y. 3d at 465-66. The defendant told the police after his arrest that he that he had recently begun to fear the victim and had been carrying the gun "for protection." *Id.* at 466. In *Payne*, the defendant marched over to the home of a neighbor, with whom he was angry, carrying a 12-gauge shotgun, and shot him just below the chest. 3 N.Y.3d at 269. At trial, the defendant admitted to shooting his neighbor intentionally, but argued that he acted in self-defense. *Id*. It is not hard to conclude that the jury, after rejecting the justification defense, was required to find that the killing was intentional, rather than reckless.

Taken together, *Hafeez*, *Gonzalez*, and *Payne* establish that an intentional murder could not be done recklessly. And they reflect the New York Court of Appeals' attempt to identify certain limited factual scenarios that would support a jury's finding of reckless conduct. But none of the three cases gave the Court of Appeals an occasion to consider facts like those now before us. To name just one distinguishing fact: unlike the defendants in those cases, Gutierrez had no prior relationship or personal disagreement with either of his victims.

*People v. Suarez*, the New York Court of Appeals opinion issued only months after Gutierrez's conviction became final, further reinforces our judgment that the jury verdict in the instant case must survive federal review. *See* 6 N.Y.3d 202. *Suarez* surveyed New York precedents to identify types of one-on-one murder that might qualify as depraved indifference murders. The first two recurring fact patterns the Court of Appeals identified— depraved indifference murders that are the result of torture, and the abandonment of a helpless victim, *see id.* at 212-13—are not relevant in this case. But the court also discussed a third, less well defined category, typified by *People v. Roe*, the "Polish roulette" case, 74 N.Y.2d 20 (1989). In *Roe*, what distinguished the defendant's actions from an intentional murder was the fact that, although he used a weapon, he recklessly risked the victim's death without intending to kill.

The jury in the instant case could very well have taken the view that Gutierrez engaged in similar behavior. In the middle of a brawl outside of Rick's, Gutierrez threatened a group of men with his knife and then "accidentally stabbed" the first victim, Narcisso. From this evidence, a reasonable jury could conclude that Gutierrez wielded his knife haphazardly, without intending to kill anyone, but nevertheless indifferent as to whether he

16

inflicted fatal injuries. After stabbing Narcisso, Gutierrez and three others pursued John Villaplana away from the fracas toward a driveway down the road. John suffered a single stab wound to his chest, with two wound tracks. No one witnessed Gutierrez stab John. The medical examiner testified at trial that the two wound tracks were equally consistent with the knife being partially withdrawn and reinserted *or* with "the victim moving back, and then the victim for some reason going forward again." A possible inference, therefore, is that John was the one that moved during the stabbing, or that both John and Gutierrez were changing positions during the stabbing. On this evidence, a jury could believe that the stabbing occurred because Gutierrez wielded his knife recklessly during a struggle.

The jury could also have found that Gutierrez's conduct was inconsistent with an intent to kill. Gutierrez left the scene while John was still standing, when an intentional killer might have made certain he was dead. Gutierrez did not know whether John was living or dead when Gutierrez was later questioned by the police. When asked why he stabbed John, Gutierrez told a detective that he "didn't know why" he stabbed him. After the stabbing, Gutierrez bragged to a van full of strangers that he was "happy that he had used his knife." Although the fatal stabbing was one-on-one and face-to-face, the evidence is sufficient for a jury to have found that Gutierrez's conduct was not intentional, but was reckless and took place in circumstances evincing a depraved indifference to human life.

We would nevertheless be less than candid if we did not admit that one might read New York law as precluding a conviction for depraved indifference murder on the facts of this case. To do so would entail reading the words used in *Hafeez*, *Gonzalez*, and *Payne*—as Gutierrez does—to mean that one-on-one murders are categorically intentional. But we do not believe that the New York Court of Appeals created an inflexible rule that would allow

17

a single factor—one-on-oneness—to delimit the definition of the crime, without regard to other evidence of the defendant's mental state. Rather, we have consistently interpreted these cases to provide guidance on how such objective circumstances may shed light on the *mens rea* of criminal defendants, and we have considered such individual factors along with additional relevant data in the record in order to determine whether there is sufficient evidence of the requisite *mens rea*.

Thus, our recent cases involving New York defendants whose convictions became final after *Payne* have upheld depraved indifference convictions in various situations involving one-on-one murders. In *Garbutt v. Conway*, Garbutt confronted the victim, his estranged ex-girlfriend, at a bus stop and demanded that she talk to him. 668 F.3d 79 (2d Cir. 2012). When she refused to talk, he grabbed her. The victim's daughter tried to pull her mother out of his grasp, and in the ensuing struggle the defendant took out a knife and stabbed his ex-girlfriend twice and ripped her daughter's jacket with his knife. *Id.* When the police apprehended him later, he was unaware that his victim had died from her wounds. *Id.* He appealed his depraved indifference murder conviction claiming, as Gutierrez does here, that we were required to release him from jail because he had killed his victim intentionally. We noted that Garbutt may very well have committed an intentional murder, but we held that "a reasonable jury could equally have found that Garbutt had struck out in blind anger, without specifically intending to cause death, but with an awareness that his conduct could have deadly consequences." *Id.* at 82. Specifically, "[t]he jury could . . . have inferred from the fact that Garbutt ran away before verifying that Blanchard had died that he had not intended to kill her." *Id.*

In *Parker v. Ercole*, the defendant allowed his drinking companions to egg him into stealing the victim's car, even though he protested at first that he couldn't play such a trick on a childhood friend. 666 F.3d 830, 835 (2d Cir. 2012). When the victim discovered the theft, he punched the defendant's companion and walked away. The defendant, after boastfully gathering attention to himself, then fired the shot that killed his childhood friend. In one of the defendant's prior appeals, the New York Appellate Division noted that the defendant had no experience with guns, and that he fired at the victim from a distance, during a blizzard, and while the victim was pacing back and forth. When we reviewed Parker's habeas appeal, we added that it was "particularly relevant . . . that Parker . . . did not pursue Johnson, the victim, even when it initially appeared that Johnson was not mortally wounded by the shot." *Id.* at 835. We held that "there was sufficient evidence for a rational trier of fact to find that Parker acted recklessly and with depraved indifference when he shot Johnson, and not with the intent to kill." *Id*; s*ee also Rivera v. Cuomo*, 664 F.3d 20, 21–22 (2d Cir. 2011) (In a case in which the defendant shot his ex-wife in the head at point-blank range, "although evidence of significantly heightened recklessness was slim, at best, giving the state courts and the jury the utmost deference, we cannot find that the evidence was so completely lacking that *no* rational jury could have found Rivera guilty of depraved indifference murder." (internal quotation marks and citation omitted)).

Having reviewed our prior interpretations of New York law in this context, we find Gutierrez's arguments on the merits to be unpersuasive. On the record of this case a considerable range of inference was available to the finders of fact, and we cannot say that no reasonable jury could have found that Gutierrez committed depraved indifference murder.

## C. Certification

New York law—together with Second Circuit Local Rule 27.2(a)—permits us to certify to New York's highest court "determinative questions of New York law [that] are involved in a case pending before [us] for which no controlling precedent of the Court of Appeals exists." N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a). Certification is an important and highly desirable way for federal courts to give deference to state courts in establishing what state law is. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 (1997) ("Certification procedure . . . allows a federal court faced with a novel state-law question to put the question directly to the state's highest court, reducing the delay [of *Pullman* abstention], cutting the cost, and increasing the assurance of gaining an authoritative response."). We have said that certification may be appropriate "if the New York Court of Appeals has not squarely addressed an issue and other decisions by New York courts are insufficient to predict how the Court of Appeals would resolve it." *Bessemer Trust Co. v. Branin*, 618 F.3d 76, 93 (2d Cir. 2010). As we will explain, however, not every case involving close questions of state law should be resolved by recourse to this procedure. This panel has concluded that the questions in this case should not be certified.

Certification is especially important in categories of cases where, unless there is certification, the state courts are substantially deprived of the opportunity to define state law. This problem is present, for example, when certain state law questions only arise in disputes governed exclusively by federal law, such as bankruptcy or copyright. *See, e.g.*, *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30 (2d Cir. 2010) (certifying a question about the situs of injury under New York's long-arm jurisdiction statute in a copyright case); *In re Peaslee*, 547 F.3d 177, 183-84 (2d Cir. 2008) (certifying a question of state law in a

20

bankruptcy case, and noting that although the answer would be relevant to a "profusion of cases percolating through the federal courts," so far "the issue in [that] case [had] not been addressed by any court of the State of New York, let alone the Court of Appeals"). This problem also arises when the federal courts have diversity jurisdiction over most of the cases presenting certain state law questions, a situation which is not unlikely in insurance and corporate law. Certification in such cases discourages forum shopping and "affirm[s] that it is the state's High Court that is entitled to have the final say on any issue of state law." *City of Burlington v. Indem. Ins. Co. of N. Am.*, 346 F.3d 70, 74 (2d Cir. 2003); *see also Liriano v. Hobart Corp.*, 132 F.3d 124, 132 (2d Cir. 1998) (warning that litigants may seek a federal court forum for a state law question when "the state's highest court has cast doubt on the scope or continued validity of one of its earlier holdings," because a federal court may feel bound to follow precedent that the state court is prepared to overrule); *McCarthy v. Olin Corp.*, 119 F.3d 148, 157 (2d. Cir. 1997) (Calabresi, *J.*, dissenting) (noting that certification in diversity cases serves to avoid the evil "of forum shopping that *Erie R.R. Co. v. Tompkins*, was intended to prevent") (internal citation omitted)). But this problem is manifestly not a concern in this case. Indeed, the state courts have had any number of opportunities to say what the law of depraved indifference murder should be, and New York will have many opportunities to correct us if our view of the law is inaccurate.

Failure to certify, however, requires more than the simple fact that the state court will have other opportunities to speak to the issues. After all, state law governs the parties' claims, and when the law is uncertain, the state's highest court is the best determinant of their rights. There are reasons why, however, even when a state law question seems unclear, certification is nevertheless inappropriate. This is particularly so when time is of the essence.

*See Tunick v. Safir*, 209 F.3d 67, 90-96 (2d Cir. 2000) (Sack, *J.*, concurring in the judgment) (arguing against certification in the case because the period of certification itself amounted to an unconstitutional restraint on the speech there at issue). But it is equally inappropriate to certify where we believe that, although state law is uncertain, the uncertainty is manifested in cases that are profoundly factual. *See, e.g.*, *Exxon Co., U.S.A. v. Banque de Paris*, 889 F.2d 674, 675 (5th Cir. 1989) (reporting that the Supreme Court of Texas, in an unpublished opinion, had declined to answer a certified question "because the question 'was dependent upon issues of fact.'"); *Santasucci v. Gallen*, 607 F.2d 527, 529 (1st Cir. 1979) (approving the district court's decision not to certify a question to the New Hampshire Supreme Court because "[u]nderlying the many difficult legal issues . . . are a number of disputed factual issues."); *Eley v. Pizza Hut of Am.*, 500 N.W.2d 61 (Iowa 1993) (declining to answer a question certified by a U.S. district court "[b]ecause the stated facts are in conflict and could be a basis for this court to answer the certified questions in a variety of ways"); *W. Helicopter Servs., Inc. v. Rogerson Aircraft Corp.*, 811 P.2d 627, 629 (Or. 1991) ("Certification . . . is not appropriate if disputed facts make questions of law unclear."). That is the situation we believe is before us today.

Although the Court of Appeals could clearly establish the rule that one-on-one murder is never depraved indifference murder, we believe that it had not done so by the time Gutierrez's conviction became final in 2005 and, indeed, that it has not done so to date. Instead, the New York Court of Appeals has begun to use the depraved indifference murder cases to provide guidance *on how to read facts* as indicative of mental state. It follows that if we were to certify in this case we would feel pressed to certify every time an appeal of a depraved indifference murder conviction presented a somewhat different factual scenario.

Where decisions based on similar facts have been made by the Appellate Division, we will follow those precedents. Where, instead, such particularized determinations would have to be made by the Court of Appeals, and where we are sufficiently confident as to how these judgments should come out, we are reluctant to impose on the Court of Appeals the burden of deciding whether to make these fact-intensive decisions. Most of the time, asking a state court to consider whether to accept certified questions is not an undue burden. But appeals in this context, based on the claim that an intentional murderer should be released because his conviction for depraved indifference murder cannot stand, require time-consuming factual analyses that are not only highly individualized, but also fraught with tension. As a result, the burden on the New York Court of Appeals of considering whether to accept certification cannot be treated as minor.[5] Combining all these reasons together with the fact that New York will have many opportunities to correct us if we have misjudged New York law, we conclude that it is not appropriate to certify in this case.

### III.    CONCLUSION

The district court's dismissal of Petitioner's claim is AFFIRMED.

---

[5] We note in passing that at an earlier stage, the New York Court of Appeals declined to hear a challenge to the sufficiency of the evidence in this case. *People v. Gutierrez*, 12 N.Y.3d 816 (2009). The Appellate Division opinion below, *People v. Gutierrez*, 871 N.Y.S.2d 325 (2008), had rejected Gutierrez's sufficiency argument for reasons of forfeiture, an issue we have dealt with in Section II.A of this opinion. Therefore, that Court of Appeals decision is not determinative of the question before us today. Nevertheless, the past reluctance of the New York Court of Appeals to review this case is not irrelevant to certification, because acceptance of a certified question on the part of a state court is always optional.